**In the Matter of CLARY HOUSE, INC., Debtor.**

**Terence G. MERRIGAN, trustee in bankruptcy, Plaintiff,**

v.

**SMALL BUSINESS ADMINISTRATION, Mid-American Bank, Clover Club Foods, Inc., and Lippold Investments, Inc., Defendants.**

**Bankruptcy No. 80–02853–3–11.**
**Adv.Action No. 80–0795–3–11.**

United States Bankruptcy Court,
W. D. Missouri, W. D.

June 3, 1981.

Jack N. Bohm, Kansas City, Mo., for plaintiff.

John Kapnistos, Kansas City, Mo., for Small Business Administration.

David Achtenberg, Kansas City, Mo., for Clover Club Foods, Inc.

Stephen B. Sutton, Kansas City, Mo., for Lippold Investments, Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT GRANTING THE PLAINTIFF'S COMPLAINT FOR MARSHALLING OF ASSETS

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff trustee in bankruptcy has filed a complaint to compel the marshaling of assets by the defendants so as to preserve the lien interest of the bankruptcy estate in certain property. In count I of the complaint, the plaintiff requests that the defendant Small Business Administration be required first to "foreclose the deed of trust" executed by Robert Lippold in favor of the assignor of the Small Business Administration before it satisfies its lien against "all furniture, fixtures, machinery, equipment, tools and accounts receivable, inventory, contract rights, and general intangibles and proceeds." In Count II, the plaintiff requests that Clover Club Foods, Inc., be required first to foreclose a deed of trust in its favor, executed by the Lippold Investment Company, before it attempts to satisfy its lien against the accounts receivable and inventory of the debtor.

In its answer to the complaint, the Small Business Administration appears to oppose the relief requested in stating that:

"inasmuch as it holds the first security interest in the said personal property and in the said real property ... a fair and commercially reasonable appraisal should first be made of all the said properties. In the event this court should order the personal property items to be sold at this time, those proceeds should first be applied to the said Small Business Administration indebtedness which at this time is $430,157.14 ... In the alternative and again if this court should order the said personal property items sold at this time, than those proceeds should be held and maintained by the court or its designee until such time as the real property may be sold and those proceeds could then be applied to pay the aforesaid SBA indebtedness ..."

In its answer, Clover Club Foods, Inc., (1) claims a security interest in the real property which is the subject of count I of the complaint[1] and (2) opposes the prayers for relief in both count I and count II.

Before the court could proceed to a hearing of this matter, the trustee filed an "application for continuance," in which he stated that "an option agreement has been entered into concerning the property located at 4320 Clary Boulevard which, if sold under the terms of the option agreement, would provide sufficient equities to pay off the claims of defendants in this adversary action and would thus make plaintiff's attempt to marshal assets moot." A copy of an unexecuted "option to purchase" was attached to the application for continuance, under the terms of which Lippold Investments, Inc., granted Federal-Mogul Corporation "the exclusive option to purchase, for a total purchase price of ... $575,000.00 ... the premises and land ... located at 4320 Clary Boulevard."

---

1. Since the filing of the answer, Clover Club Foods, Inc., has not actively opposed the grant-ing of relief. No brief has been filed on its behalf.

The court honored the application and, accordingly, on February 4, 1981, continued the hearing initially set for February 5, 1981, to March 5, 1981. On the last date, Lippold Investments, Inc., filed its application to intervene and was granted the requested leave to intervene as a party defendant.

Thereafter, with leave of court, the parties filed a stipulation of facts on March 30, 1981, and their respective legal briefs. The stipulation of facts is to the following effect:

"1. The plaintiff, Terence G. Merrigan, is the duly appointed and acting trustee in bankruptcy of Clary House, Inc.

2. The defendant, Small Business Administration, guaranteed a loan made by Mid-American Bank to Clary House, Inc., in the amount of $500,000.00, represented by a promissory note dated April 1, 1978; that after default in the payments due on said note, the note was assigned by Mid-American Bank to the Small Business Administration on July 17, 1980. Said promissory note was secured by a security agreement on the debtor's furniture, fixtures, machinery, equipment and tools, present and future accounts receivable, proceeds, chattel paper, contract rights, general intangibles and all inventory now or hereafter owned. The security agreement is also now held by the Small Business Administration.

3. The note to Mid-American Bank, and now held by the Small Business Administration, was co-signed by Lippold Investments, Inc.

4. The note to Mid-American Bank, now held by Small Business Administration, was additionally secured by a deed of trust on real estate on Clary Boulevard in Kansas City, Jackson County, Missouri, executed by the co-signer of the note and owner of the real estate, Lippold Investments, Inc. This deed of trust was also assigned to the Small Business Administration on July 17, 1980 by the Mid-American Bank & Trust Company.

5. Both Clary House, Inc. and Lippold Investments, Inc. are privately held corporations. Robert Lippold is the president and a substantial stockholder of both corporations . . .

6. The debtor, nor any of the defendants, nor the intervenor, Lippold Investments, Inc., is contesting count I of plaintiff's petition which seeks to marshal liens as it applies to the Small Business Administration.

7. On or about June 6, 1979, Clary House, Inc. executed a promissory note to Clover Club Foods Company (herein 'Clover'). A copy of the note and amendment to the note were attached to Clover's Answer as Exhibits I and II. Lippold Investments, Inc. endorsed the note and amendment as indicated on them. In addition, on or about June 5, 1979, Lippold Investments, Inc., executed an unconditional and continuing guaranty agreement. A copy of that guaranty was attached to Clover's Answer as Exhibit III.

8. As security on its guaranty to Clover Club Foods Company, referred to in the preceding paragraph, Lippold Investments, Inc. executed (inter alia) a deed of trust covering certain property commonly known as 4320 Clary Boulevard, Kansas City, Missouri and a deed of trust covering certain property commonly known as 923 South 10th Street, St. Joseph, Missouri. Copies of these deeds of trust were attached to Clover's Answer as defendant's Exhibits IV and VII, respectively.

9. Clover claims there is due from the debtor the amount of . . . $114,232.49 . . ., plus interest after September 30, 1980, plus (inter alia) costs and attorneys' fees as provided in the note, guaranty, and deed of trust. Clary claims approximately . . . $101,000.00 . . . is due on said note.

10. All security agreements and deeds of trust were properly perfected and/or filed.

11. In certain previous proceedings in this matter, Clover was granted certain additional security as set forth in this court's order dated October 16, 1980 in the adversary matter entitled *In re Clary*

*House, Inc., Clary House, Inc. v. National Packaging Co.*, et al., adversary action number 80–0413–3–11.

12. The trustee has been liquidating assets and collecting the accounts receivable pursuant to court orders with a proviso in said orders that any liens against the assets or receivables would continue against the proceeds thereof.

13. Lippold Investments, Inc. does not object to the court's requiring the Small Business Administration to marshal liens and to collect the indebtedness owed it by the Debtor from the proceeds of the sale of the real estate located on Clary Boulevard in Kansas City, Missouri.

14. As of this time, the property on Clary Boulevard in Kansas City, Missouri, is under a contract for sale.

15. As of this time the property in St. Joseph, Missouri, above referred to, is under a contract for sale . . . $42,500.00 . . ., less real estate commissions and closing costs.

16. The trustee has collected accounts receivable and presently has a net amount in his possession of $65,666.09, and received $97,329.70 net from the sale of the trucks."

### Conclusions of Law

■ According to the express terms of paragraph 6 of the above and foregoing stipulation, count I of the complaint should be granted. See also the brief filed by the intervening defendant Lippold Investments, Inc., on March 30, 1981, to the effect that it "has no objection to the relief sought by the Trustee in Count I for the reason that it is a co-maker with the debtor upon the Joint Promissory Note to the SBA; it is not a guarantor of that obligation." Therefore, the plaintiff's prayer for relief based on count I of the complaint will be granted.

The defendant Lippold Investments, Inc., however, objects to the trustee's claim for relief in count II of the complaint which seeks to compel the defendant Clover Club Foods, Inc., to marshal assets to satisfy the debtor's indebtedness to it, which is guaranteed by Lippold Investments, Inc. The plaintiff trustee would thus have the defendant Clover Club Foods, Inc., satisfy the debt to it from real property (a second deed of trust on that at 4320 Clary Boulevard in Kansas City and a deed of trust on that located in St. Joseph) owned by Lippold Investments, Inc., rather than from property which would otherwise go into the bankruptcy estate. The defendant Lippold Investments, Inc., asserts two grounds in opposition to the relief requested in count II: (1) "it is clear that the law simply does not permit marshaling of liens or assets against a secondary obligor who has merely guaranteed the indebtedness of the principal debtor" and (2) invocation of the doctrine of marshaling assets in this case would result in no gain for the bankruptcy estate because "(i)t has been repeatedly held that a guarantor who satisfies in whole or in part the indebtedness guaranteed is subrogated to the rights and security interests of the creditor which the guarantor pays."

■ The doctrine of marshalling of assets "is not bottomed on the law of contracts or liens. It is founded instead in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all the parties." *Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963). "If a senior lienor has a lien that extends to and covers two funds or potential funds and if a junior lienor has recourse to any one of those funds to satisfy the debt due him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior lienor . . . Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshalling in proper cases." *In re Jack Green's Fashions for Men Big and Tall, Inc.*, 597 F.2d 130, 132 (8th Cir. 1979). It is the contention of the intervening defendant Lippold Investments, Inc., however, that

Clover Club Foods, Inc., the "senior lienor" within the meaning of these statements, does not have "recourse" to the property of Lippold Investments, Inc., without first exhausting its remedies against the debtor. For, it is contended, with respect to the obligations to Clover Club Foods, Inc., Lippold Investments, Inc., is only a secondarily liable guarantor rather than a co-maker.

■■■ This court has no disagreement with the propositions and authorities which have been cited by the defendant Lippold Investments, Inc., to the effect that a secondarily liable guarantor's property should not be the subject of the doctrine of marshalling of assets. The plaintiff trustee, however, contends that Lippold Investment's liability "is the same as a co-signor because its guaranty of payment (as described in the U.C.C.) as well as its waiver in the guaranty agreement itself." The faces of the note and the guaranty agreement demonstrate that this contention is meritorious. In the promissory note of April 28, 1979, executed by Clary House, Inc., in favor of Clover Club in the sum of $114,446.62 and endorsed by Lippold Investments, Inc., on June 6, 1979, it is pertinently agreed that "(t)he maker, sureties, guarantors and endorsers hereof severally waive presentment for payment, protest, notice of protest and of nonpayments of this Note." Further, in the "unconditional and continuing guaranty" of the indebtedness executed by Lippold Investments, Inc., on June 5, 1979, it is explicitly provided that:

" . . . It shall not be necessary for Clover Club to resort to or exhaust its remedies against Clary or against any other party liable thereon or to resort to any property held as security therefor or pertaining thereto before calling upon the undersigned for payment of any Guaranteed Obligation.

"Upon default of Clary in any of the terms and conditions of the Guaranteed Obligation, any property now or hereafter held as security for or pertaining to the Guaranteed Obligation, may be sold, exchanged, surrendered or otherwise dealt with by Clover Club without notice to, without the consent of, and without affecting the liability of the undersigned.

\*      \*      \*      \*      \*      \*

"Undersigned waives notice of the acceptance hereof, waives demand for payment, notice of dishonor, protest and notice of protest relative to the Guaranteed Obligation, waives all notices to which the undersigned might otherwise be entitled by law including notice of the financial condition of Clary, and also waives all defenses, legal or equitable, otherwise available to the undersigned, including, but not limited to, the pleading of any statute of limitations."

Under such provisions, when the guarantor waives demand, presentment, notice of dishonor and protest, it is said that his liability is equivalent to that of a co-maker. "An indorser who guarantees payment (and) waives not only presentment, notice of dishonor and protest, but also all demand upon the maker or drawee . . . (incurs) liability . . . indistinguishable from that of a co-maker." Comments to section 400.3–416 RSMo. Further, under the express terms of the "unconditional and continuing guaranty," Lippold Investments, Inc., undertakes to "absolutely and unconditionally guarantee . . . the prompt and punctual payment when due of that obligation evidenced by that certain Promissory Note dated as of April 28, 1979 of Clary to Clover Club, and any renewals or extensions thereof, . . . together with all interest, charges and penalties accruing therein . . ." Such unconditional guaranty of payment is the equivalent, by operation of law, of a promise "that if the instrument is not paid when due (the endorser) will pay it according to its tenor without resort by the holder to any other party." Section 400.3–416 RSMo. This, according to the comments under the section, is intended to make the guaranty of payment indistinguishable from the liability of a co-maker.

■■■ On the basis of these facts, therefore, the court concludes that the doctrine of marshaling of assets is available to compel Clover Club Foods, Inc., first to satisfy the indebtedness to it from the available assets of Lippold Investments, Inc., who is a

co-maker of the note to it. Under the facts of this action, this constitutes an equitable exercise of the doctrine of marshaling of assets, subjecting assets of a party who agreed unconditionally to be liable for the debt toward its satisfaction and otherwise preserving other assets for distribution to the general creditors. When property other than that which would otherwise go into the estate is available to the secured creditor, "it would be in the highest degree inequitable to allow the (creditor) to exhaust the . . . assets of the (estate) without first looking to the real estate mortgaged to it. To permit such a course would leave the general creditors of the (estate) with nothing." *In re Jack Green's Fashions for Men Big and Tall, Inc.*, 597 F.2d 130, 133 (8th Cir. 1979). These same findings and conclusions serve to eliminate the claim of Lippold Investments, Inc., that it is entitled, under the doctrine of equitable subrogation, to succeed to the claim of Clover Club Foods, Inc., against the debtor and thereby deprive the estate of any gain. For the doctrine of equitable subrogation is also applicable only under conditions in which equity requires its application and not in an action such as that at bar in which the potential subrogee is a co-maker.[2] It can hardly be regarded as equitable for the general creditors of the debtor to be rived of any recovery in favor of one who agreed unconditionally to be liable for the debtor's obligations.

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that counts I and II of the plaintiff's complaint for marshaling of assets be, and they are hereby, granted as prayed.

---

2. "Legal subrogation is a creature of equity not depending upon contract, but upon the equities of the parties . . . It is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case." *Compania Anonima Venezolana De Nav. v. A. J. Perez Exp. Co.*, 303 F.2d 692, 697 (5th Cir. 1962), and authority there cited. "One who pays another's debt to protect his own rights and interests is not ordinarily con-

sidered a volunteer and *may* be subrogated to the creditor's rights.". *First Nat. City Bank v. United States*, 548 F.2d 928, 936 (Ct.Cl.1977) (Emphasis added.) As noted in the text of this memorandum, the comparative equities, without more, must be regarded as in favor of the general creditors as opposed to a party who has agreed to pay the debt of another as a co-maker.