In re LUDWIG HONOLD MANUFAC-
TURING COMPANY, Debtor.

The COMMITTEE OF CREDITORS OF
LUDWIG HONOLD MANUFACTUR-
ING COMPANY, INC., and Fred Zim-
merman, Trustee, Plaintiffs,

v.

CENTRAL PENN NATIONAL
BANK, Defendant.

Bankruptcy No. 81–04610G.
Adv. No. 83–1742G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 13, 1983.

Reconsideration Denied Nov. 22, 1983.

Nancy V. Alquist, Douglas J. Smillie, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff, The Committee of Creditors of Ludwig Honold Mfg. Co., Inc.

Melvin Lashner, Daniel Bernstein, Melvin Lashner & Associates, Philadelphia, Pa., for plaintiff Fred Zimmerman, trustee.

John J. Lamb, Philadelphia, Pa., for debtor, Ludwig Honold Mfg. Co., Inc.

James M. Matour, Paul Patterson, Robert A. Kargen, White & Williams, Philadelphia, Pa., for defendant, Central Penn National Bank.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

■ The issue at bench is whether under the doctrine of marshalling of assets we should order a creditor who holds a security interest in the debtor's property as well as the property of the debtor's sureties, to foreclose its security interest in the sureties' property prior to recourse against the debtor's property. The issue is presented to the court through the defendant's motion to dismiss the complaint for failure to state a cause of action. For the reasons stated herein we will deny the motion.

The facts of this case are as follows: [1] An involuntary petition for relief under chapter 11 of the Bankruptcy Code was filed against Ludwig Honold Manufacturing Company, Inc. ("the debtor"), on November 9, 1981. Shortly thereafter an order for relief was entered and a trustee was appointed. Prior to the filing of the reorganization petition Central Penn National Bank ("Central Penn") loaned the debtor a substantial amount of money in exchange for a security interest in the debtor's goods. To assure repayment of the debt Central Penn obtained guarantees from three entities which guarantees are secured by collateral. The loan documents state that in the event of default on the loan Central Penn has the discretion to seek recourse against the property of either the sureties [2] or the debtor. During the pendency of this reorganization the trustee liquidated virtually all of the debtor's property which was secured by Central Penn's security interest and has distributed the proceeds to this creditor. The trustee and the committee of unsecured creditors [3] hereafter commenced this action to compel marshalling.

■ The parties have not pointed to any federal rule of decision governing this matter, and thus our decision must be based upon existing state law or, in the absence of such law, upon our determination of how the state courts would resolve the matter if presented with it. 28 U.S.C. § 1652.[4] The governing rule of law in Pennsylvania on the equitable doctrine of marshalling is summarized as follows:

[W]hen a creditor has a lien on two funds in the hands of the same debtor and another creditor has a lien on only one of them, the first may be compelled in equi-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. The defendant notes that although under Pennsylvania law a distinction is made between guarantors and sureties, the distinction is immaterial in this case. The plaintiff does not dispute that fact, and thus we will use the terms interchangeably.

3. Hereafter in this opinion the trustee and the committee of unsecured creditors will be denominated as "the trustee."

4. Section 1652 states as follows: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

ty to levy his debt out of the fund to which the other cannot resort.

*Schwarz's Estate,* 290 Pa. 420, 422, 139 A. 131, 132 (1927); *Ramsey's Appeal,* 2 Watts 228, 232 (1834); *Lloyd v. Galbraith,* 32 Pa. 103, 108 (1858).

Central Penn asserts several points in resisting the complaint for marshalling. First, it points out, the debtor holds only one fund; the other funds being in the hands of the sureties. Second, marshalling cannot be invoked in favor of unsecured creditors. Third, the balance of equities weighs against marshalling. The trustee has responded to these assertions in turn. Firstly, he argues that the guarantors' security is deemed a contribution to the capital of the corporation, and thus equity should view the debtor as holding two funds. Secondly, the Bankruptcy Code gives the trustee the status of a secured creditor pursuant to 11 U.S.C. § 544 and consequently the party invoking marshalling is, in fact, a secured creditor. And thirdly, the equities weigh in favor of marshalling. Central Penn also contends that the trustee has waived marshalling by failing to seek it timely since virtually all of the debtor's collateral has been liquidated with distribution of the proceeds going to Central Penn. Although both parties have referred to numerous cases, for some inexplicable reasons they have failed to cite the line of Pennsylvania authorities that deny a creditor's request for marshalling between the collateral of a debtor and his surety. Squarely on point is *Schwarz's Estate,* 290 Pa. 420, 139 A. 131 (1927), in which five individuals held equal shares in a decedent's estate. Joseph, one of the shareholders, was indebted to the Northern Trust and Savings Company ("Northern"). Joseph and three other shareholders granted a security interest in their shares to Northern to assure payment of Joseph's debt. Subsequent to this the Dauphin Deposit Trust Company ("Dauphin") obtained a lien on Joseph's share. Under the doctrine of marshalling, the lower court directed Northern to seek payment of its debt from the three surety shareholders before proceeding against Joseph's share. Dauphin was directed to seek payment of its debt from the remainder of Joseph's share only after the satisfaction of Northern's claim. Under this scheme the three surety shareholders would have been left with nothing, while Dauphin would have received partial payment from Joseph's share. Had marshalling not been applied, Northern's claim would have exhausted Joseph's share, but only part of each of the shares of the three sureties, while Dauphin would have received nothing. The Pennsylvania Supreme Court reversed the lower court and held that marshalling was not applicable. The court stated as follows:

> While it is true under certain circumstances that a creditor who has a lien on two funds must give way as to one of them to another creditor who has a lien on only one of them, the two funds must be in the hands of the same debtor. Here the debtor was Joseph and he did not have two funds in his hands, he had only one,—his own interest in his mother's estate.... Here the creditor is [Northern]. Its primary debtor is Joseph. It has two funds upon which it can call, that belonging to Joseph and that belonging to Schwarz [who is a surety shareholder]. As in *Neff v. Miller,* 8 Pa. 347, the creditor has a joint and several encumbrance against the estates to *two distinct debtors.* "It is . . . . . . the case of two funds belonging to the different debtors, and not an instance of a double fund belonging to a common debtor. Under such circumstances, a court of equity will not, in general, compel the joint creditor to resort to one of his debtors for payment, so as to leave the estate of the other debtor for the payment of his separate and several debt, for, as between the two debtors, this might be inequitable; and the equity subsisting between them ought not to be sacrificed merely to promote the interest of the separate creditor,' which is what would happen in the instant case if we followed the lower court.

290 Pa. at 425–26, 139 A. at 133 (emphasis in original).

This same principle is expressed in *Miller Lumber & Coal Co. v. Berkheimer,* 342 Pa. 329, 20 A.2d 772 (1941). In this case a wife acting as a surety mortgaged her property in favor of one of her husband's secured creditors. Another creditor who had a lien solely upon the husband's collateral sought to compel the first creditor to proceed against the wife's property before seeking recourse to the husband's property. In noting that marshalling was not applicable to the case, the Pennsylvania Supreme Court stated as follows:

> The rule of marshalling does not prevail except where both funds are in the hands of a common debtor of both creditors or unless the fund taken is one which in equity is primarily liable....
>
> Each debt was in fact the debt of the husband alone and the wife has a right to insist that the husband's land be sold first in satisfaction of what was in reality his debt. She has the rights of a surety. *Fulmer v. Stewart,* 207 Pa. 70, 71, 56 A. 1135. The rule [of marshalling] is never enforced where it will unjustly prejudice the rights of third parties.

342 Pa. at 331–32, 20 A.2d at 773.

This same factual situation was found in the related cases of *Fulmer v. Stewart,* 207 Pa. 70, 56 A. 1135 (1903) and *Stewart v. Stewart,* 207 Pa. 59, 56 A. 323 (1903). In nothing that a wife stood in no different stead as a surety than a friend acting as such, the Pennsylvania Supreme Court refused the request for marshalling.

■ The case law cited [5] above indicates that in Pennsylvania marshalling generally cannot be ordered merely upon averment that the creditor seeking marshalling has a lien on only the debtor's property, and that a surety has pledged collateral to assure payment of the principal's debt. Pennsylvania's rule comports with the generally accepted application of the doctrine of marshalling in this country. In reaching the same result on this issue that we have, the court in a neighboring jurisdiction stated that "[t]his [rule] is in accord with virtually every court in the United States which has specifically addressed the issue." *Central Trust Co., N.A. v. Burchett (In Re Willson Dairy Co.),* 30 B.R. 67, 71 (Bkrtcy.S.D.Ohio, 1981).[6]

The trustee has cited several cases that seem contrary to the general rule of disallowing marshalling against a surety. The first is *Farmers & Merchants Bank v. Gibson,* 7 B.R. 437 (Bkrtcy.N.D.Fla.1980) in which the court granted the request of the trustee in bankruptcy for marshalling against the surety who was principal shareholder and president of the debtor corporation. The court granted the request for marshalling since the surety was guaranteeing a business debt rather than a nonbusiness debt. The court explained its rationale as follows:

> [W]here there has been a guaranty of a business debt for the purpose of obtaining working capital to either initiate or continue the operation of the business, ... [t]he foreseeable and likely result of obtaining such working capital, partly on the strength of the guarantor's personal liability and any property which the guarantor may have specifically pledged to secure such guaranty, is the inducement of others to innocently commence or continue to extend supplies or services to the

**5.** *See also, Penn Security Bank & Trust Co. v. Royce,* 32 B.R. 63 (Bkrtcy.M.D.Pa.1983); *United States of America v. Friend (In Re A.E.I. Corp.),* 11 B.R. 97 (Bkrtcy.E.D.Pa.1981).

**6.** In an annotation fostered by the opinion in *Miller Lumber & Coal Company v. Berkheimer, supra,* the annotators discussed whether the "doctrine of marshalling of assets [may] be invoked to require a senior lienor to resort first to the surety, or property of the surety, of [the] common debtor." 135 A.L.R. 738 (1941). The note stated as follows:

The cases seem to be in full accord that a junior creditor of a common debtor cannot, under the guise of the doctrine of marshaling assets, require a senior creditor, who is additionally secured by the common debtor's surety, to resort first to the surety's property before having recourse to the property of the principal debtor.

Id. Twenty states are listed as subscribing to the general rule. Cases from the various jurisdictions are collected at 135 A.L.R. at 738–39.

principal on credit. . . . Unlike the ordinary nonbusiness related guaranty case, here, the courts, in view of the 'additional equitable considerations', conclude that the individually owned property must be regarded in equity as a contribution to capital

7 B.R. at 441. The parties have cited no Pennsylvania case which has adopted this position. We believe that if the Pennsylvania Supreme Court were faced with this situation it would hold that the mere guaranteeing of a business debt by a surety is not an adequate basis for deeming the surety's collateral a contribution to the capital of the debtor corporation. *See, e.g., Schwarz and Miller, supra.*[7]

The second case cited by the trustee is *Merrigan v. Small Business Administration (In Re Clary House, Inc.)* 11 B.R. 462 (Bkrtcy.W.D.Mo.1981), in which the court allowed marshalling against a surety since, under the provisions of the promissory note, "when the guarantor waives demand, presentment, notice of dishonor and protest, it is said that his liability is equivalent to that of a co-maker." *Id.* at 466. The court apparently considered both the surety and principal debtor primarily liable on the note. The Pennsylvania courts have also not addressed this issue but we believe that they would have denied marshalling. We determine that in adjudicating a request for marshalling a Pennsylvania court, sitting as a court of equity, would look to the essence of the transaction and see that in the typical situation it is the debtor who is primarily liable while the surety is only secondarily so.

The trustee next asserts that his position is supported by a group of cases which state that marshalling can be granted against the surety of a corporate debtor if the surety engaged in some inequitable conduct to warrant it. *See, e.g., McDonald v. First National Bank of Athens (In Re Harrold's Hatchery and Poultry Farms, Inc.)* 17 B.R. 712, 717 (Bkrtcy.M.D.Ga.1982) (request for marshalling between surety and corporate debtor denied but court indicates that it may be granted upon a showing of inequitable conduct, disregard for the corporate structure, or fraud); *Stuhley v. United States Small Business Admin. (In Re United Medical Research, Inc.)*, 12 B.R. 941, 944 (Bkrtcy.C.D.Cal.1981) request for marshalling between surety and corporate debtor denied but court suggests that it may be granted in the presence of fraud, overreaching or other inequitable conduct. Although no Pennsylvania appellate courts have addressed these issues we believe they would adopt the principals of these cases as exceptions to the rule quoted above in *Schwarz.*

We can grant the defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted only if it appears certain that the plaintiff is entitled to no relief under any statement of facts which could be proved in support of the claim. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 2A *Moore's Federal Practice* 12.08 (2d ed. 1982). Although the plaintiff's averments in support of an action under the rules expressed in *Harrold's Hatchery* and *United Medical Research* are so attenuated as to be virtually nonexistent, we will deny the motion since it is not certain that the trustee will fail to prevail at trial.

---

**7.** Juxtaposed to our determination of Pennsylvania authority is *Moser Paper Co. v. North Shore Publishing Co.,* 83 Wis.2d 852, 266 N.W.2d 411 (1978). The Wisconsin courts are fairly liberal in allowing marshalling against a surety and apparently will grant the remedy for the same reasons offered in *Gibson.* Also cited by the trustee is *In Re Jack Green's Fashions for Men—Big and Tall, Inc.,* 597 F.2d 130 (8th Cir.1979), in which the court upheld the district court's affirmance of a marshalling order. Since the circuit court relied "largely on the basis" of the unpublished lower court opinion it cannot be determined from the circuit court's opinion whether the affirmance was based merely on the fact that the sureties guaranteed a business debt or whether the sureties engaged in some inequitable conduct.