**In the Matter of WEST COAST OPTICAL INSTRUMENTS, INC., Debtor.**

**TOPCON INSTRUMENT CORPORATION OF AMERICA, Plaintiff,**

v.

**WEST COAST OPTICAL INSTRUMENTS, INC., NCNB Financial Services, Jack L. Johnston, individually, and as Trustee, and Roberta Johnston, Defendants.**

**Bankruptcy No. 87–2574–8B1. Adv. No. 87–420.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 15, 1988.

Russell S. Bogue, III, Tampa, Fla., for NCNB Financial Services, defendant.

Edward M. Waller, Jr., John D. Emmanuel, Tampa, Fla., for Topcon Instrument Corp. of America, plaintiff.

Don M. Stichter, Tampa, Fla., for debtor/defendant West Coast Optical.

Jeffrey W. Warren, Tampa, Fla., for Jack L. and Roberta Johnston, defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THE ABOVE–STYLED adversary proceeding came before this Court for final evidentiary hearing on December 31, 1987, at which time the parties submitted stipulated facts. Plaintiff, Topcon Instrument Corporation of America (Topcon), requests this Court to require Defendant, NCNB Financial Services (NCNB Financial), to marshall its collateral. The relevant facts as stipulated by the parties are as follows:

Debtor, West Coast Optical Instruments, Inc. (Debtor) filed its Chapter 11 Petition on May 13, 1987. The Debtor has been in the business of producing, wholesaling and marketing ophthalmological and other medical furniture, equipment and supplies since 1971. Jack J. Johnston is the founder and has directly or indirectly been the controlling shareholder of the Debtor. Mr. Johnston has also acted as president and chairman of the board of directors. Roberta Johnston, Jack L. Johnston's wife, was also an officer and director of the Debtor.

NCNB Financial has had a financing arrangement with the Debtor since October 13, 1983. The Debtor executed on that date a Financing and Security Agreement granting NCNB Financial a first priority continuing general lien and security interest in the Debtor's collateral, including receivables, inventory, and proceeds. As further security, on March 13, 1985, the Debtor executed another security agreement granting NCNB Financial a continuing security interest in all goods and chattels, including machinery, equipment and furniture.

Topcon also has a security interest in the Debtor's assets, including its accounts, inventory and proceeds. Although Topcon had been conducting business with the Debtor since 1971, the Debtor and Topcon did not enter into a security agreement until October 31, 1986. In the agreement, Topcon expressly subordinated its security interest in the collateral to NCNB Financial's.

In addition, NCNB Financial holds second mortgages on two parcels of real estate. The first parcel, known as "the 26th Avenue property", is owned by Jack L. Johnston and Roberta Johnston in tenancy

by the entireties. The second parcel, known as "the 15th Street property", is owned by Jack L. Johnston as Trustee of the Jack L. Johnston Revocable Trust dated February 26, 1980. Both mortgages to NCNB Financial were executed as part of the ongoing financing arrangement between NCNB Financial and the Debtor.

As further consideration for this financing arrangement, Mr. Johnston in his personal capacity, executed a guarantee of the Debtor's obligations to NCNB Financial on October 13, 1983. The guaranty expressly states it is an "absolute, continuous, unconditional and unlimited guaranty of indefeasible payment" and is "enforceable before and after proceeding against the Debtor." The 15th Street property and the 26th Avenue property secure Mr. Johnston's personal guaranty. Topcon never received a personal guaranty from either of the Johnstons.

Two marshalling issues are presented for consideration. The first is the propriety of compelling NCNB Financial to seek recovery from the Johnstons' real property prior to seeking recovery from the Debtor's assets. The second is whether NCNB Financial should be compelled to look to the fixed assets of the Debtor for repayment before looking to the Debtor's accounts receivable and inventory.

Marshalling "rests upon the principle that a creditor, having two funds to satisfy his debt, may not by his application of them to his demand defeat another creditor, who may resort to only one of the funds." *Meyer v. U.S.*, 375 U.S. 233, 236, 84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963). In such a case, the first creditor is required to satisfy its claim from the collateral which the second creditor cannot reach before looking to the common fund. This allows the second creditor to recover more from its only source of security. *In re Francis Construction Company, Inc.*, 54 B.R. 13 (Bankr.S.C.1985). In this case NCNB Financial has a security interest in both the assets of the Debtor and the assets of the guarantor, Jack L. Johnston and his wife. Topcon has a security interest in the assets of the Debtor only.

Three elements must be satisfied before the equitable doctrine of marshalling may be applied. These are:

1. The existence of two creditors with a common debtor;
2. The existence of two funds belonging to the debtor; and,
3. The legal right of one creditor to satisfy his demand from either or both of the funds while the other may resort only to one fund.

*United States v. Friend (In re A.E.I. Corp.)*, 11 B.R. 97 (Bankr.E.D.Pa.1981). In addition, the party seeking to invoke marshalling has the burden of demonstrating marshalling would benefit the estate without imposing an undue hardship on the senior lienholder. *Whirlpool Corp. v. Plad, Inc. (In re Plad, Inc.)*, 24 B.R. 676, 680 (Bankr.M.D.Tenn.1982).

The first element is satisfied. There is a common debtor, West Coast Optical, with two creditors, NCNB Financial and Topcon. It is the second element, the existence of two funds belonging to the Debtor, which is the major source of argument among the parties.

In this case, one source of the funds sought to be marshalled is West Coast Optical. The other source is the corporate shareholder, guarantor Jack L. Johnston. Generally, "a corporation is an entity distinct from its shareholders, as between a junior creditor and a senior creditor who can also resort to the stockholders, the necessary condition of a common debtor does not exist." *In re Rich Supply House, Inc.*, 43 B.R. 68 (Bankr.N.D.Ill.1984). As is the case with most rules of law, however, exceptions have been carved out to meet equitable concerns. Marshalling has been required although the common debtor rule has not been met in two particular instances, 1) when the corporate veil could properly be pierced, or 2) when a shareholder's property should be deemed to be a contribution to the capital of a corporation. *In re Francis Construction Company, Inc.*, 54 B.R. 13 (Bankr.S.C.1985).

When the common debtor rule is overcome by piercing the corporate veil, proper-

ty titled in the names of the individual stockholders is subjected to the claims of the creditors of the corporate entity. *Farmers and Merchants Bank v. Gibson*, 7 B.R. 437 (Bankr.N.D.Fla.1980). In Florida, the corporate veil will not be pierced without a showing of improper conduct. *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla.1984).

> So long as proper use is made of the fiction that corporation is entity apart from stockholders, fiction will not be ignored ... Where stockholders enter into a transaction in individual interest and utilize corporate name merely to mislead creditors or perpetrate fraud, legal entity will be ignored and stockholders held individually liable ...

*Id.* citing *Biscayne Realty and Insurance Co. v. Ostend Realty Co.*, 109 Fla. 1, 148 So. 560, 564 (1933). Improper conduct on the part of West Coast Optical's stockholders is not an issue. Therefore, in order for Topcon to avoid the strict requirement of the common debtor rule, it must demonstrate sufficient facts for this Court to treat the Johnston's property as a contribution to the capital of West Coast Optical. *McDonald v. First National Bank of Athens (Matter of Harrold's Hatchery and Poultry Farms, Inc.)*, 17 B.R. 712, 717 (Bankr.M.D.Ga 1972).

Topcon contends Jack Johnston's guaranty and the two mortgages securing guaranty were a contribution to the Debtor's capital and should therefore be treated as the Debtor's property. Topcon relies on *Farmers & Merchants Bank v. Gibson*, 7 B.R. 437 (Bankr.N.D.Fla.1980) which is one in a short line of decisions which regard guarantees and the property securing them as contributions to the Debtor's capital. See *Moser Paper Co. v. North Shore Publishing Co.*, 83 Wis. 2d 852, 266 N.W.2d 411 (1978).

> In *Gibson*, the Bankruptcy Court stated, ... where there has been a guaranty of a business debt for the purpose of obtaining working capital to either initiate or continue the operation of the business ... the foreseeable and likely result of obtaining such working capital, partly on the strength of the guarantor's personal liability and any property which the guarantor may have specifically pledged to secure such guaranty, is the inducement of others to innocently commence or continue to extend supplies or services to the principal on credit.
>
> ...Unlike the ordinary nonbusiness related guaranty case, here, the courts, in view of the 'additional equitable considerations', conclude that the individually owned property must be regarded in equity as a contribution to capital.

*Id.* at 441. In *Gibson* the Court distinguished between nonbusiness and business related guarantees. Topcon urges this Court to do the same.

Topcon contends the Johnstons' guaranty and mortgages assisted the Debtor in obtaining working capital. The guaranty and the granting of the mortgage on the 26th Avenue property were conditions set when NCNB Financial Services first started its financing arrangement with the Debtor. The guaranty and mortgages secured and supported frequent overadvances to the Debtor.

As counsel for the Johnstons correctly points out, the *Gibson* line of decisions has been severely criticized. In fact, on appeal the *Gibson* decision was vacated and remanded because the factual findings of the bankruptcy court with respect to the common debtor requirement were ambiguous. *Peacock v. Gibson*, 81 B.R. 79 (N.D.Fla. 1981). On remand, the bankruptcy court never reached the issue of whether the personal property constituted contributions to the Debtor's capital for purposes of meeting the common debtor requirement. Rather, the court found the issue moot because the personal property was exempt homestead property not subject to marshalling. *Gibson v. Farmers and Merchants Bank*, 81 B.R. 84 (N.D.Fla.1986). This Court is in agreement with the criticisms of the initial *Gibson* decision and will not overlook the consequences of avoiding the common debtor rule in this manner.

> Funding a 'common debtor' merely through the lender's supplying working capital pursuant to a loan collateralized

by a debtor's assets merely because a guaranty was also collateralized by personal assets is a deterrent to new corporate enterprise that spurs technological and economic growth.

*Fundex Capital Corporation v. Balaber–Strauss (In re Tampa Chain Company, Inc.),* 53 B.R. 772 (Bankr.S.D.N.Y.1985).

It is poor policy for courts to upset legitimate business transactions because of some vague concept of equity. We tend to forget that these decisions affect future commercial transactions. Advantageous and proper loans to corporations may be frustrated because shareholders would be fearful of having their personal assets marshalled for corporate creditors should they guarantee a corporate debt.

*Stuhley v. United States Small Business Administration (In re United Medical Research, Inc.),* 12 B.R. 941, 943 (Bankr.C.D. Cal.1981).

The equitable policy consideration underlying the *Gibson* decision is the fear the working capital loans secured by the corporate principal's guaranty and property would induce others to *innocently* commence or continue to extend supplies or services to the principal on credit. This consideration is inapplicable to the case at hand. Here, Topcon was fully aware of the Debtor's financial position, as shown by Topcon's subordination of its lien to NCNB Financial Services. Topcon was not deceived by an appearance of adequate working capital. In a similar situation, the Court in *DuPage Lumber and Home Improvement Center Company, Inc. v. Georgia–Pacific Corporation,* 34 B.R. 737 (N.D.Ill.1983) pointed out,

When a trade creditor becomes a secured creditor, and then becomes involved with the debtor's finances to the extent of executing a written subordination agreement, it does not seem that the law should be extended to encourage that creditor to rely merely on an appearance of adequate working capital.

*Id.* at 742.

This Court will not follow *Gibson* and finds the Johnstons' guaranty does not constitute a capital contribution for the purpose of obtaining a working capital loan under the marshalling theory.

Topcon, however, has an alternate basis for arguing the personal assets of the Johnstons are a capital contribution to the Debtor. Topcon relies on *Merrigan v. Small Business Administration (Matter of Clary House, Inc.),* 11 B.R. 462 (Bankr. W.D.Mo.1981) for the proposition that if a guarantor agrees unconditionally to be liable for the debtor's obligations, the guarantor is actually a co-maker of the debtor's obligation, thus satisfying the common debtor requirement.

In *Merrigan,* the trustee sought an order compelling the lender to seek payment first from the principal of the debtor. The principal had executed a guaranty of the debtor's indebtedness. The language of the guaranty provided, "... It shall not be necessary for [senior lienholder] to resort to or exhaust its remedies against ... [the debtor] or against any other party liable thereon or to resort to any property held as security therefor or pertaining thereto before calling upon the undersigned for payment of any Guaranteed Obligation." *Id.* at 466. The Court found that because the principal had unconditionally guaranteed payment to the lender, the principal was in effect a co-maker. *Id.* The Court ordered marshalling, finding it equitable to subject the principal's assets to the payment of the debt.

Topcon argues Johnston's guaranty was also unconditional, making Mr. Johnston a co-maker of the Debtor's obligations. In opposition, Mr. Johnston argues the guaranty contains boilerplate waiver language and that Mr. Johnston did not intend to waive his rights or intend to be primarily liable to NCNB Financial. Again, counsel for the Johnstons points out the criticism of *Clary House.* The Court in *Committee of Creditors of Ludwig Honold Manufacturing Company, Inc. v. Central Penn National Bank (In re Ludwig Honold Manufacturing Company),* 33 B.R. 724 (Bankr.E.D.Pa.1983) refused to follow *Clary House,* stating:

We determine that in adjudicating a request for marshalling, a Pennsylvania

court, sitting as a court of equity, would look to the essence of the transaction and see that in the typical situation it is the debtor who is primarily liable while the surety is only secondarily so.

*Id.* at 728.

Topcon's argument ignores the legal distinction between the terms "co-maker" and "guarantor." The Uniform Commercial Code clearly distinguishes between these terms. *Fla.Stat.* 673.413, .415, .416. Inasmuch as the distinction serves an important function for commercial transactions, the Court will not merge these concepts for purposes of marshalling. Such a distortion of the law would be inequitable. As a general proposition, a guarantor simply cannot be characterized as a co-maker in order to meet the common debtor requirement. See *Matter of Dealer Support Services International, Inc.,* 73 B.R. 763 (Bankr.E.D.Mich.1987).

As the court notes in *Peoples Bank of Tuscaloosa v. The Computer Room, Inc. (In re Computer Room, Inc.),* 24 B.R. 732, 735 n. 3 (Bankr.N.D.Ala.1982),

There is a distinction between a surety (primarily liable) and a guarantor (secondarily liable). A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration ... On the other hand, the contract of guarantor is his separate undertaking, in which the principal does not join. Black's Law Dictionary (5th Ed.1979); *Valley Mining Co. v. Metro Bank,* 383 So.2d 158 (Ala. 1980). However, there is no recognized surety—guaranty distinction in the application of the marshalling doctrine because these assets are not owned by a common debtor of both creditors (e.g., not contributed capital).

This Court would be hard-pressed to follow the co-maker characterization for finding a capital contribution to support the common debtor requirement. Since Topcon has failed to demonstrate facts to support the common debtor requirement, this Court holds that marshalling is inappropriate as to the guarantor's real property.

▪ Had the three requirements for marshalling been met, Topcon would still have to demonstrate the invocation of marshalling would not injuriously affect the rights of NCNB Financial or a third person. *State Bank of Florida v. Roche,* 35 Fla. 357, 17 So. 652 (1895); See generally, *Dealer Support Services, supra;* 6 Pomeroy, *Pomeroy's Equity Jurisprudence and Equitable Remedies,* § 866 (1905). Undue delay or prejudice to the senior lienholder are the sort of injuries which will prohibit marshalling. *In re United Retail Corporation,* 33 B.R. 150 (Bankr.Hawaii 1983). In this case, if NCNB Financial Services were compelled to marshal, it would have to foreclose upon the 15th Street property and 26th Avenue property prior to going against the corporate assets. The foreclosure actions pose the type of delay which would injure the rights of NCNB Financial.

... if marshalling were ordered, unless the guarantors paid the note, the bank would have to institute foreclosure proceedings, pay off the balance of the existing land contract, and suffer the inherent delays and expense of a foreclosure proceeding. To compel marshalling under these circumstances would clearly prejudice the bank. Not only would the bank be prejudiced if marshalling were ordered, but the creditors of the nondebtor would also be prejudiced in that they would not be able to look towards a principal asset of the guarantor for payment of their debts.

*Matter of Dealer Support Services International, Inc.,* 73 B.R. 763, 766 (Bankr.E. D.Mich.1987).

▪ This Court is also satisfied that by compelling NCNB Financial to marshal, the rights of Mrs. Johnston would also be injured. Mrs. Johnston has an interest in both parcels of real estate. While she executed the mortgages, she did not give NCNB Financial her personal guarantee. NCNB Financial cannot be compelled to resort to property, though pledged to pay a debt, that belongs to one other than the common debtor. *Roche, supra,* 17 So. at 654. See *Coors of North Mississippi, Inc. v. Bank of Longview (In re Coors of North*

*Mississippi, Inc.)*, 66 B.R. 845 (Bankr.N.D. Miss.1986). Thus, even if Mr. Johnston was considered a common debtor with West Coast Optical, Mrs. Johnston is not.

Since the common debtor requirement has not been met, and it appears marshalling would cause injury to NCNB Financial and Mrs. Johnston, this Court finds marshalling inappropriate with respect to the Johnstons' real property. The Court will now consider the marshalling of the Debtor's fixed assets.

■ NCNB Financial holds a security interest in all of the Debtor's personal property, including inventory, accounts receivable, proceeds, fixed assets and equipment, while *Topcon* holds a junior security interest only in the Debtor's accounts receivable, inventory and proceeds. Here, West Coast Optical is a debtor of both Topcon and NCNB Financial. Two funds, one consisting of the Debtor's accounts receivable, inventory and proceeds, belong to the Debtor; and NCNB Financial has a legal right to satisfy the debt from either fund while Topcon may only resort to the Debtor's accounts receivable, inventory and proceeds. While this scenario meets the three elements necessary for marshalling, Topcon has failed to demonstrate that the marshalling of the Debtor's fixed assets would not prejudice NCNB Financial. Therefore, this Court is satisfied that marshalling is inappropriate with respect to these assets as well. *In re Plad, supra.*

Accordingly, this Court finds in favor of Defendants and against Plaintiff, Topcon Instrument Corporation. A separate final judgment will be entered by the Court.