**In re PACKARD PROPERTIES, LTD., Debtor.**

**Michael F. WURST, Trustee, Plaintiff,**

**v.**

**CITY OF NEW YORK; State of New York; New York City Water Board; Federal Deposit Insurance Corporation as Manager of the Federal Savings and Loan Insurance Corporation Resolution Fund as Receiver for Vernon Savings and Loan Association, FSA; Thierry W. Despont; Basic Food Service Equipment Corporation; and Herbert Construction Company, Defendants.**

**Bankruptcy No. 387–32807–RCM–7.**

**Adv. No. 389–3623.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

March 2, 1990.

Michael F. Wurst, Dallas, Tex., Trustee.

Rita D. Dumain, Asst. Corp. Counsel, Corp. Counsel of the City of New York, New York City, for the City of New York.

D. Farrington Yates, Dallas, Tex., for Federal Deposit Insurance Corp.

Catherine E. Bracken, Dallas, Tex., for Herbert Construction.

MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

On January 29, 1990, came on to be heard the motion for partial summary judgment of Michael Wurst, Trustee ("Trustee") against the City of New York (the "City") and the motion for summary judgment of the City. The Trustee requests

that his claim for administrative expenses be given priority over all other creditors pursuant to § 724(b)(2) and that the administrative claim escrow be set at $650,000. The City requests a holding that 11 U.S.C. § 724(b)(4) violates the Fifth and the Tenth Amendments of the Constitution of the United States, and that the Court direct the Trustee to pay the entire amount of the City's lien after payment of administrative expenses and other prior claims. The City invokes the doctrine of marshaling. The Federal Deposit Insurance Corporation ("FDIC"), as manager of the Federal Savings and Loan Insurance Corporation Resolution Fund, as receiver for Vernon Savings and Loan, FSA, actively opposes the City's motion.

For purposes of the foregoing motions, the following are the undisputed facts.

## Undisputed Facts

1. Packard Properties, Ltd. ("Debtor") filed a petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* ("Code"), with this Court on April 2, 1987, thus commencing the above-captioned bankruptcy case. On April 27, 1988, this Court entered an order converting this case to a case under Chapter 7 of the Code. On May 10, 1988, Plaintiff was appointed Chapter 7 Trustee herein, and continues to serve in that capacity.

2. Among the assets of the estate at the time of the Trustee's appointment was that certain real property located at 41 West 56th Street, New York City, New York, commonly known as the "Bon Vivant Property" (the "Property"). On or about May 2, 1989, the Trustee filed a Motion for Order Authorizing Sale of Real Property pursuant to § 363 of the Code with respect to the Property. On or about May 18, 1989, Herbert, a putative secured creditor with respect to the Property, filed its Objection to the Trustee's Motion, seeking to forestall the proposed sale and force abandonment of the Property from the bankruptcy estate.

3. The FSLIC, as Receiver for Vernon, a federally chartered savings and loan association, also claims a lien encumbering the Property. The FSLIC supported the Trustee's proposed sale.

4. During the pendency of the Motion, and prior to the hearing thereon, the Trustee became aware of the potential lien claims of the City of New York, through various subdivisions thereof (including the New York City Water Board), the State of New York, Mr. Thierry W. Despont, and Basic Food Service Equipment Corporation, all of whom are named as Defendants herein. Although the Trustee provided all putative lien claimants, and other parties-in-interest, with notice of his Motion and the hearing with respect thereto, HCC, the FSLIC, and the City of New York were the only parties filing objections, responses in support, or otherwise making appearances in connection with the hearing on the Trustee's Motion.

5. On July 13, 1989, the Motion came on for hearing, and after considering the arguments of Herbert in opposition to the proposed sale, and the arguments of the Trustee and the FSLIC in support of the Motion, and the evidence presented by the Trustee and the FSLIC, the Court approved the proposed sale. On July 14, 1989, the Court entered its Order and Findings of Fact and Conclusions of Law regarding the Trustee's Motion for Authority to Sell Real Property.

6. The sale price for the Property was $3,325,000. The Property was sold on or about October 31, 1989. After the payment of closing costs and brokers' commissions, as authorized by the Court's Order approving the sale, the Trustee received net proceeds of $2,437,515.47 (the "Net Proceeds").

7. As provided by Court Order, the Trustee has taken the Net Proceeds and deposited them in interest-bearing accounts without further disbursement. The Trustee commenced this adversary proceeding to determine the validity, extent and priority of liens for the

purpose of determining a proper distribution of the Net Proceeds.

8. The NY City tax claims exceed $630,-000.

9. There exists administrative claims remaining from the Chapter 11 case herein in the approximate amount of $200,000. In addition, the Trustee estimates that the aggregate administrative expenses to be incurred in this Chapter 7 case, including attorney fees, commission and income and other taxes will aggregate approximately $450,000. Thus, claims of the kind specified in § 507(a)(1) aggregate approximately $650,000.

10. The Trustee holds approximately $300,000 in unencumbered proceeds of the estate, which have no relationship to the sale proceeds in question.

11. By operation of law, under § 724(b)(2) administrative claims are given first priority in distribution of proceeds of this estate.

### § 724(b)

Section 724(b) reads as follows:

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's

allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

Section 724(b) designates a tax lien as a source of payment of administrative claims. Thus whenever property of the estate is burdened by a tax lien (local, state or federal) the amount of that lien can be used to pay administrative expenses. The City of New York claims that the section puts junior lienors ahead of senior tax liens. That misstates the effect of § 724(b). The legislative history is clear on this point. The junior liens are left undisturbed, they neither advance nor lose ground in their position. H.R.Rep. No. 595, 95th Cong, 1st Sess 382 (1977). Section 724 just substitutes the administrative claimant in the place of the tax claimant to the extent of their claim.[1] The effect of § 724(b) is to take the tax claimant's lien and give it to the administrative claimants. After § 724(b) has been applied, the tax claimants are put behind the junior lienors in priority only because they have been, in effect, left unsecured.[2]

### Constitutional Considerations

■ The City does not contest its subordination to administrative claimants under § 724(b)(2). However, it claims that § 724(b)(4) is violative of the 5th and the 10th amendments of the U.S. Constitution

---

**1.** For discussion of § 724(b), see, *Collier's* § 724.03; *In re Kamstra,* 51 B.R. 826 (Bankr.W. D.Mich.1985). *In re Granite Lumber Co.,* 63 B.R. 466 (Bankr.D.Mont.1986). *Matter of Cropper Co., Inc.,* 63 B.R. 874 (Bankr.M.D.Ga.1986). *In re Sherrill,* 78 B.R. 804 (Bankr.W.D.Tex. 1987). *In re Darnell,* 834 F.2d 1263 (6th Cir. 1987). *Matter of Stroud Wholesale, Inc.,* 37 B.R.

735 (Bankr.E.D.N.C.1984), *rev'd on other grounds,* 47 B.R. 999 (E.D.N.C.1985).

**2.** Perhaps the best description of the mechanics of § 724(b) is found in *In re Darnell, supra.* In footnote 9 of this opinion, the Sixth Circuit gives a very helpful example of how § 724(b) works with regards to tax liens, junior liens and administrative expenses.

because it allows the junior lienors to come ahead of the tax claimants whose liens are senior under state law.

The constitutionality of § 724(b) was addressed in *In re Kamstra*, 51 B.R. 826 (Bankr.W.D.Mich.1985).[3] In *Kamstra* the court held that § 724(b) did not violate either the Fifth or the Tenth Amendments to the U.S. Constitution.

The City distinguishes itself from *Kamstra* because that case involved a dispute between administrative claimants and taxing authorities, whereas they are in dispute with junior lienors. That is, the City contends that although it is constitutional for them to be subordinated to administrative claimants under § 724(b)(2), it is unconstitutional for them to be subordinated to junior lienors under § 724(b)(4). For the reasons stated in *Kamstra*, this Court disagrees with the City and finds that § 724(b) is constitutional in the way it affects junior lienors as well.

The City is put behind junior lienors because they have been stripped of their lien to the extent of the administrative claims. That amount of their claim which is so displaced is in effect made into a special class of unsecured debt. It is below any other liens [§ 724(b)(4)], but will be paid off [§ 724(b)(5)] before the remaining money is paid to the estate [§ 724(b)(6)]. Thus, the City would be paid from the proceeds before the other unsecured creditors of the estate. The City's frustration is understandable. As stated in *In re Darnell*, *supra*, at 1267 n. 9, "... §§ 724(b)(2) and (3), in effect, allow 'priority claimants [to] step into the shoes of the tax collector.'"

However, that act of "substitution" has been held constitutional.

The "taking" that the City is complaining of is for the benefit of the administrative expenses. The junior lienors, such as the FDIC, do not benefit. The effect of § 724(b) is only that the FDIC would stand in line behind administrative claims instead of tax liens. There is not one dollar difference for the FDIC. The City wants the junior lienors to bear the burden of paying the administrative expenses. However, in writing § 724, Congress determined that the tax claimants shall bear that burden.

The City also distinguishes itself from *Kamstra* in that the application of § 724(b) would have a "significant economic impact" upon them in that their revenue base would be seriously threatened. This argument is speculative at best and insufficient to hold § 724(b)(4) unconstitutional.[4]

Marshaling

The City next contends that the Trustee should be required to marshal the remaining assets of the estate for payment of the administrative claims before drawing on the proceeds in question. That is, the Trustee should turn to the tax lien pursuant to § 724(b) only after he has exhausted all other means of paying the administrative expenses.

There are three traditional threshold requirements of marshaling: 1) the contesting claimants both have secured claims against a common debtor; 2) the funds in question belong solely to the common debtor; and 3) one of the lienors, alone, could resort to more than one fund or asset of the debtor.[5] Almost all bankruptcy courts that have addressed the issue of marshalling cite the requirements of this list.[6]

---

**3.** See also, *Matter of Stroud*, 37 B.R. 735 (Bankr. E.D.N.C.1984); *Matter of Hirsch–Franklin, Enterprises, Inc.*, 63 B.R. 864 (Bankr.M.D.Ga.1986); and *Matter of Cropper*, 63 B.R. 874 (Bankr.M.D. Ga.1986);

**4.** In *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), one of the factors that the Supreme Court listed to determine whether the governmental action is a "taking" is the "economic impact of the regulation". Page 124, 98 S.Ct. page 2659. The *Kamstra* court said there was no "significant economic impact" because

"[t]he Court has not been shown, and doubts whether, the volume of bankruptcies in Kent County threatens to erode the entire tax base or some large portion of it." Page 830. Based on the summary judgment record, this Court agrees that such quoted finding is likewise applicable to this case.

**5.** 53 Am.Jur.2d *Marshalling Assets*, § 7 (1970).

**6.** For example, see *In re Bay Metro Glass Co. Inc.*, 101 B.R. 50 (Bankr.E.D.Wis.1989); *Matter of Mel–O–Gold, Inc.*, 88 B.R. 205 (Bankr.S.D. Iowa 1988); *Matter of West Coast Optical Instr.*

A recent article, Averch & Prostok, *The Doctrine of Marshaling: An Anachronistic Concept under the Bankruptcy Code*, 22 U.C.C.L.J. 224 (1990) addresses this issue. The authors argue that the doctrine should not be applied in Bankruptcy cases. They argue that because of the flexible, case-by-case nature of this equitable remedy, it throws confusion and unpredictability into the bankruptcy process. The authors further argue that provisions of the bankruptcy code such as equitable subordination, avoidance of statutory liens, preference law, fraud transfers, and creditor plans ensure equity and make marshaling unnecessary. Page 244.

Because of these inherent problems with marshaling in the bankruptcy context, most courts have applied the three common law requirements very strictly.[7]

There are only two cases found where the issue of marshaling was raised in a § 724(b) context:

1) *In re Granite Lumber Co.*, 63 B.R. 466 (Bankr.D.Mont.1986). On page 473, the court said, "I interpret 724(b) to be implemented to pay administrative costs or other priority claims under 507(a)(1)–(6) only when there are not other funds which are property of the estate. Otherwise, the secured tax lien claimant and secured mortgage holder would in effect subsidize the creditors junior to the senior lien holders."

2) *In re Sherrill*, 78 B.R. 804 (Bankr.W. D.Tex.1987). On page 807, the court said that "when Section 724(b) is available to enable a Chapter 7 trustee to recover his administrative expenses and costs of sale, the trustee must look to that fund for payment. If he fails to do so, Section 506(c) will not be available as a substitute to "back and fill".[8]

These two opinions could be construed to reach opposite results on the marshaling issue in this case. *Granite* cites no authority. *Sherrill* cites only one case which is not really on point here.[9]

■ Marshaling does not apply under the facts of this case. Looking at the three common law requirements, the City fails the first one: "the contesting claimants both have secured claims against a common debtor." Before § 724(b) is applied, the administrative claims are not secured. When § 724(b) is applied, the administrative claims become prioritized, but they are not secured creditors in the traditional sense. The City's tax lien claim is displaced. In short, we do not have the traditional marshaling situation where two secured creditors have liens on the same property. Therefore, since the present circumstances do not fall within the common law requirements for marshaling, that equitable remedy will not be applied in this action.

As a matter of policy, it appears that marshaling should not normally be applied in a § 724(b) context. The legislative history to § 724(b) makes clear the intent of Congress as to its effect. Tax liens were chosen by Congress as a means to pay administrative expenses. Whenever an administrative expense is paid in a Chapter 7 case, someone will bear the cost. Usually it is the unsecured claimants. If there is property in the estate with a tax lien on it,

*Inc.*, 89 B.R. 198 (Bankr.M.D.Fla.1988); *Matter of Woolf Printing Corp.*, 87 B.R. 692 (Bankr.M. D.Fla.1988); *In re Mid–West Motors, Inc.*, 82 B.R. 439 (Bankr.N.D.Tex.1988).

7. See *In re Bay Metro Glass Co. Inc.*, *supra*; *Matter of Mel–O–Gold, Inc.*, *supra*; *Matter of West Coast Optical Instr. Inc.*, *supra*; *Matter of Woolf Printing Corp.*, *supra*; *In re Coors of North Mississippi, Inc.*, 66 B.R. 845 (Bankr.N.D. Miss.1986); *Matter of Dealer Support Services Intern., Inc.*, 73 B.R. 763 (Bankr.E.D.Mich.1987); *In re Oransky*, 75 B.R. 541 (Bankr.E.D.Mo.1987); *In re Corso Stein Enterprises, Inc.*, 79 B.R. 584 (Bankr.D.N.J.1987); *In re Mesa Intercontinental, Inc.*, 79 B.R. 669 (Bankr.S.D.Tex.1987); *In re*

*Elsinore Shore Associates*, 91 B.R. 238 (Bankr.D. N.J.1988); and *In re T.H.B. Corp.*, 85 B.R. 192 (Bankr.D.Mass.1988).

8. *Sherrill* is not exactly on point because it involved paying administrative expenses from the proceeds of other property pursuant to § 506(c), whereas New York is contending that the Trustee should pay the administrative expenses generally out of the estate. Thus, *Sherrill* can be read narrowly to hold that a trustee should look to § 724(b) before he resorts to § 506(c).

9. *In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546 (9th Cir.1987). Limits the use of § 506(c).

§ 724(b) provides for the taxing authorities to bear the cost to some extent. That was a decision of Congress. By requesting this court to marshal, the City is asking that the unsecured creditors pay the greater majority of the administrative expenses.[10]

### Conclusion

The City's motion for summary judgment to have § 724(b) held unconstitutional is denied. The City's request to have the trustee to look first to unencumbered assets for payment of administrative expenses is also denied.

Furthermore, since the contested issues between Herbert Construction Company and the Trustee could make the above findings moot, the motion for partial summary judgment by the Trustee is denied at this time. The Trustee can re-urge his motion at a later date depending on the outcome of the litigation with Herbert Construction Company.

Interpretation of this opinion should not be extended beyond the specific issues addressed in the respective summary judgment motions. Other possible issues not raised, briefed, or addressed in the foregoing opinion might include the following:

Proper allocation of administrative expenses—for example, is there any basis for holding that the unpaid Chapter 11 administrative expenses, estimated at $200,000, should not be charged in whole or in part against the approximately $630,000 § 724(b)(2) "tax fund"; should the administrative expenses be charged *pro rata* against the funds administered, *i.e.,* since the $2,437,515.47 "net proceeds" comprised the majority of the Chapter 7 assets administered by the Chapter 7 trustee, should the "tax fund" bear that proportion of the administrative expenses in comparison to the approximately $300,000 of other unencumbered assets, or should all the administrative expenses be allocated against just the $630,000 "tax fund", or proportionately al-

located against the "tax fund" and $300,-000 in other unencumbered assets.

Judgment will be entered in accordance with the foregoing opinion.

---

**10.** Several cases have required that the marshalling not injure the rights of the other creditor or third persons. See, *Matter of West Coast Optical Instr. Inc., supra;* and *Matter of Woolf Printing Corp., supra; In re Mid–West Motors,* *Inc., supra.* Therefore, to require the trustee to marshal in this case could prejudice the unsecured creditors and thus contradict this policy behind marshalling.