C. Gotzian & Co. and others vs. Shakman.

---

C. Gotzian & Company and others, Appellants, vs. Shakman, Respondent.

*November 14 — December 11, 1894.*

*Partnership: Debtor and creditor: Marshaling assets.*

1. Where a partner, in lieu of the capital or money which by the terms of the partnership contract he was to furnish, gave a bond and mortgages of his individual property in order to obtain credit for goods to be purchased of the mortgagee for the firm business, such bond and mortgages will be regarded in equity as a part of the capital of the firm; and where the mortgagee has attached the goods of the firm for his claim, he may be compelled, at the suit of subsequent attaching creditors, to exhaust the mortgage securities (so

far at least as the mortgages cover lands within this state) before resorting to the fund arising from the sale of the attached property.

2. The mere fact that the resort to the mortgage securities would cause some delay to the prior attaching creditor is not ground for the refusal to so marshal the assets, where, the proceeds of the attached property being in court, his rights are not endangered, nor his prior right to raise his debt out of both funds impaired, nor any part of his security taken from him.

APPEAL from an order of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Reversed.*

Action in equity. The complaint alleges, in substance, that the plaintiffs, *C. Gotzian & Co.* and *Sweet, Dempster & Co.*, are attaching creditors of C. W. E. Sommermeyer, Lena Brimi, and Anna Huebner, copartners in the clothing business at Eau Claire, and that the plaintiffs, respectively, have obtained judgments upon their demands, and that executions have been issued thereon, but that the sheriff has been unable to find any property, real or personal, belonging to the defendants, out of which to satisfy the same. It is further alleged that the plaintiffs' attachments were levied upon the stock of merchandise belonging to the said partners, Sommermeyer & Co., but that both said attachments are subsequent and subordinate to an attachment previously levied upon the said property by the defendant, *Shakman,* who is a creditor of said Sommermeyer & Co. to the amount of about $8,000; that the said stock of goods was, by direction of the circuit court, sold at public auction by the sheriff for the sum of $8,000, and the money received therefor has been deposited with the clerk of the circuit court pending the determination of the rights of the attaching creditors of the said Sommermeyer & Co. .

The complaint further alleges that said Sommermeyer, Brimi, and Huebner entered into partnership about the 23d day of January, 1890, and continued to do business until the 27th day of October, 1893, when the *Shakman* attachment

was levied; that it was agreed by and between Sommer-
meyer, Brimi, and Huebner, when the partnership was
formed, that Sommermeyer should contribute the capital
necessary to carry on the business, not exceeding about
$15,000, and that Brimi and Huebner should only contrib-
ute, as their portion of the capital, $2,000 each, and that all
the money employed in said business, except the said $4,000,
was to be contributed by said Sommermeyer, and that the
business was conducted in that manner, the said Sommer-
meyer contributing all the capital employed therein except
the said sum of $4,000; that for the purpose of carrying out
this agreement, and to enable him to obtain the money neces-
sary so to do, and also to obtain credit for goods purchased
in said business, in lieu of capital or money the said Sommer-
meyer made, executed, and delivered to defendant *Shakman*
the following bond and obligation:

"Know all men by these presents, that I, Charles W. E.
Sommermeyer, of Eau Claire, in the county of Eau Claire
and state of Wisconsin, am held and firmly bound unto
*Louis A. Shakman*, of Milwaukee, Milwaukee county, Wis-
consin, in all and every such sum and sums of money as
already have been or hereafter shall or may be paid or ad-
vanced by him for me, and all such sums of money to pay
which a liability or engagement has been or shall be made
or entered into or incurred to him, the said *Louis A. Shak-
man*, by reason of his having sold or selling goods, wares,
or merchandise to me, or to any firm of which I am a mem-
ber, or to any corporation in which I am now or here-
after may be a stockholder, or to any firm in which my wife
is or may be a member, or any corporation in which my wife
is now or hereafter may be a stockholder, or of affording
me other pecuniary assistance, together with lawful interest
from the time or times when the same becomes due, not ex-
ceeding, however, $10,000; to be paid to said *Louis A. Shak-
man*, his executors, administrators, or assigns, for which

payment, well and truly to be made, I bind myself, my heirs, executors, or administrators, firmly by these presents.

"Sealed with my seal, and dated this 10th day of June, 1890.          CH. W. E. SOMMERMEYER.    [Seal.]"

It is further alleged that in order to secure said bond Sommermeyer at the same time executed and delivered to said *Shakman* two mortgages upon certain real estate, and that his wife joined in the execution of said mortgages. One of said mortgages covers a number of lots in the city of Eau Claire, and the other certain lands in West Superior, Douglas county, Wis. It is also alleged that on the 30th day of December, 1892, for the purpose of further securing the performance of said bond, Sommermeyer and wife executed two other mortgages upon certain described parcels of real estate situated in the states of South Dakota and Minnesota; that at the time of the execution of said mortgages said Sommermeyer was the owner of the premises therein described, and that the interest conveyed by said mortgages in said lands is more than sufficient in value to enable the said *Shakman* to realize the amount of his claim therefrom. It is also alleged that at the time the said bond was executed said Sommermeyer intended thereafter to convey the property described in said mortgages to his wife, for the fraudulent purpose of preventing any of his creditors, except said *Shakman*, from reaching the same, and that in pursuance of such designs the said Sommermeyer did thereafter convey all said property to his wife, who now has a legal title to the same; that said Sommermeyer further intended, if at any time the success of his business appeared doubtful, to induce said *Shakman* to attach the stock of merchandise, so that the same might be sold under the attachment, whereby *Shakman* might realize the payment of any indebtedness owing to him, to the exclusion of other creditors.

It is further alleged that thereafter, in the prosecution of said business, said Sommermeyer & Co. became indebted to

various parties to an amount exceeding $10,000, aside from the amount claimed to be due by *Shakman;* that the attachment of *Shakman* was induced by the manner in which said Sommermeyer conducted the business, and that said Sommermeyer expected and intended that said *Shakman* should obtain payment of his claim by means of his attachment, and that the property mortgaged to *Shakman* should thereby be freed from the incumbrances incurred by the mortgage, thereby defeating the collection of the other indebtedness incurred by Sommermeyer & Co.; that by reason of these facts the only property to which the partnership had an undisputed ownership at the time the several attachments were commenced was their stock of merchandise, and that the same was seized and sold under and by virtue of the attachment of *Shakman*, the proceeds of said sale now being deposited in court as aforesaid, which proceeds said *Shakman* is seeking to have applied in payment of his claim; that said *Shakman* has ample security for the payment of his claim, and can obtain the whole thereof by foreclosure of the mortgages aforesaid, but that the plaintiffs and other creditors have no security for their claims, except from the proceeds of the sale under the attachment.

The relief prayed is that *Shakman* be required to obtain payment of his debt out of the property mortgaged to him, and that he be required to exhaust his mortgage security before participating in the proceeds of the sale of the attached goods, or that he be required to assign to the plaintiffs his said mortgage securities, so that the plaintiffs may be subrogated to his rights thereunder, and that the plaintiffs may have such further judgment or relief as may be just and equitable.

To this complaint a general demurrer was interposed, and from an order sustaining the said demurrer the plaintiffs appeal.

For the appellants there was a brief by *Geo. C. & Fred A. Teall*, and oral argument by *Fred A. Teall*.

For the respondent there was a brief by *Miller, Noyes & Miller*, and oral argument by *B. K. Miller, Jr.* They contended, *inter alia*, that defendant cannot be compelled to resort to his collateral security. *Plant's Mfg. Co. v. Falvey*, 20 Wis. 200; *Wolff v. McGavock*, 29 id. 293; *In re Meyer*, 78 id. 615. It is not a case in which the court should marshal the assets. A firm creditor should not be compelled to surrender his attachment of firm property and use assets belonging not to the firm but to an individual. 1 Story, Eq. Jur. (13th ed.), § 645; *Kendal's Case*, 17 Ves. 520; Story, Partn. (1st ed.), § 364; *House v. Thompson*, 3 Head, 516; *Knouf's Appeal*, 91 Pa. St. 79; *Case v. Beauregard*, 99 U. S. 119; *Roberts v. Oldham*, 63 N. C. 297. The rule as to marshaling will not be applied to the injury of the prior creditor, *e. g.*, where the fund is dubious, only to be reached by litigation. 1 Story, Eq. Jur. § 645, note a; *Walker v. Covar*, 2 S. C. 16; *Kidder v. Page*, 48 N. H. 380; *Emmons v. Bradley*, 56 Me. 333; *Herriman v. Skillman*, 33 Barb. 378; *Dodds v. Snyder*, 44 Ill. 53. Or where one fund is in another jurisdiction. *Denham v. Williams*, 39 Ga. 312. The paramount incumbrancer should not be delayed or inconvenienced in the collection of his debt. 3 Pom. Eq. Jur. (1st ed.), § 1414, note 3; *Evertson v. Booth*, 19 Johns. 486; *Woolcocks v. Hart*, 1 Paige, 185.

WINSLOW, J. This is an action by creditors who have attached the entire stock in trade of a trading firm, to compel another creditor, who has a prior attachment on the same property, to exhaust certain mortgage securities given to him by one member of the firm before resorting to the fund in court arising from the sale of the attached property. In support of the complaint the plaintiffs rely upon the familiar equitable principle that if one creditor can resort to

two funds, and another to one of them only, the former must first seek satisfaction out of that fund which the latter cannot touch. Conceding the existence of this principle, the defendant contends — and doubtless correctly, as a general proposition — that it only applies where the two creditors have the same debtor *and the two funds are the property of the same person.* 1 Story, Eq. Jur. (13th ed.), § 643; *Ex parte Kendall*, 17 Ves. 520. Were this an ordinary case of one creditor of a firm seeking to compel another creditor to exhaust securities given him by one partner on his individual property, we should have no difficulty in sustaining the demurrer. There are, however, allegations in the complaint which introduce additional equitable considerations, not present in the cases in which the rule has been applied, and which must be considered.

It is alleged in the complaint that, by the contract of partnership, Sommermeyer agreed with his partners to advance and furnish all the necessary capital to be used in the business, except the sum of $4,000, which his copartners furnished, and that in pursuance of this agreement, and in lieu of capital or money, he gave to *Shakman* the bond and mortgages, in order to obtain credit for goods to be purchased for the firm business. Now, if such was the agreement, it is difficult to see why the bond and mortgages, when given, did not become, in legal effect, a part of the capital of the firm. Had Sommermeyer sold the lands, or mortgaged them to a third person, and placed the proceeds to the credit of the firm account in bank, they would undeniably have become a part of the capital or assets of the firm. The funds so realized manifestly could not thereafter be treated as his individual property, but as his contribution to the capital which he was bound to furnish under the agreement he had made with his copartners. In the case at bar he has accomplished practically the same result in a different way. He has not, it is true, sold his lands and put

C. Gotzian & Co. and others vs. Shakman.

the proceeds in the money drawer of the firm; but he has mortgaged them and, in effect, placed the mortgage in the money drawer. Capital may be contributed to a firm as well by way of a security as by actual cash, and whether that security be sold and the cash put in the till, or whether it be turned out as collateral to assist the firm in buying goods and obtaining credit, can make no difference with its real character. The allegations of the complaint seem to us to demonstrate that the bond and mortgages given to *Shakman* in fact amounted to a contribution to the capital stock of the firm made by Sommermeyer in pursuance of his partnership agreement, and must be so regarded in equity. In form, it was a security given by a partner upon his individual property; in fact, it was a contribution to the capital of the firm. This plainly constitutes what is termed by Story (1 Eq. Jur. § 645) a "supervening equity which must be considered," and, when considered, it plainly brings the case within the rule, because the two funds are thus, in the contemplation of equity, both partnership funds.

But a further well-established equitable rule is invoked by the defendant, and that is that equity will not marshal assets in the manner desired here, to the injury of the prior creditor. 3 Pom. Eq. Jur. § 1414. We are unable to see what substantial injury will be inflicted upon the defendant by requiring him first to exhaust his mortgage security, at least upon lands within this state. It is true, there must result some delay, in case foreclosure is necessary, but there will be no diminishing of security, because the fund realized from sale of the stock of goods should and must be kept intact pending the defendant's attempt to realize upon his mortgages. During this time, no part of his security will be taken from him. It is true that delay to the prior creditor has been sometimes spoken of as a bar to the relief here asked, but we are not ready to subscribe to the doctrine that mere delay is sufficient to compel the court to deny the relief

C. Gotzian & Co. and others vs. Shakman.

when no other injury is involved. Some delay is a necessary consequence of the enforcement of all rights, and, if a possible delay would defeat the right of a junior creditor to have the assets of his debtor marshaled, such marshaling would rarely, if ever, take place. The true rule, we think, is well expressed in *Evertson v. Booth,* 19 Johns. 486, where it is said that the relief will not be given " if it will endanger thereby the prior creditor, or in the least impair his prior right to raise his debt out of both funds," and it is further said that there is "no principle in equity which can take from him any part of his security until he is completely satisfied." Applying these principles to this case, we discover no ground on which to refuse the relief which the plaintiffs ask, if it shall prove that the allegations of the complaint are true. With the funds realized from the sale of the attached property in court, the defendant's rights are not endangered, nor his right to raise his debt out of both funds impaired, nor is any part of his security taken from him. It seems very questionable whether the court should require the defendant to foreclose the mortgages on the Minnesota and Dakota lands, because they are beyond the jurisdiction of the courts of this state. *Denham v. Williams,* 39 Ga. 312. But it is not necessary to decide this point on this demurrer, as we think that so far as the mortgages cover lands within this state, at least, the plaintiffs are entitled, under the allegations of the complaint, to some relief.

*By the Court.*— Order reversed, and action remanded with directions to overrule the demurrer.