FARMERS & MERCHANTS
BANK, Plaintiff,

v.

Robert E. GIBSON, as Trustee,
Defendant.

Bankruptcy No. 80-9093.

United States Bankruptcy Court,
N. D. Florida,
Tallahassee Division.

Dec. 3, 1980.

T. Buckingham Bird, Monticello, Fla., for plaintiff.

Robert E. Gibson, Tallahassee, Fla., trustee for Bill Peacock Chevrolet, Inc.

## OPINION

N. SANDERS SAULS, Bankruptcy Judge.

Further proceedings in the trial of this cause hinge upon whether the doctrine of marshaling should be applied as contended by the defendant trustee.

Originally, the plaintiff bank loaned $150,000 to the corporate automobile dealership of which the defendant is now the trustee. In connection with this loan the corporation's promissory note was guaranteed by its president and principal stockholder, individually, and also by his wife.

This loan, which was obtained for working capital, was secured by a mortgage [a second mortgage] upon the corporation's real estate and also upon certain real estate, including a residence, titled in the name of the president and his wife individually as tenants by the entirety. This mortgage, encumbering both the corporate and individual property, was executed by the president in his official capacity and by he and his wife, as individuals.

When the original balance of the initial loan had been paid down to $75,000, a further advance of $50,000 was made by the bank pursuant to a future advance clause in the original mortgage. In connection with this further advance, a second promissory note in the sum of $50,000 was executed. This note was executed, not only by the corporation as its maker but also by the president and his wife, individually, as comakers rather than as guarantors.

The plaintiff bank is still owed roughly $125,000 in principal together with approximately $25,000 in accrued interest. The value of the corporation's office building and other corporate real estate, after deduction of the amounts due first mortgagees, would leave only the approximate maxi-

mum sum of $110,000 for application to the bank's second mortgage. Thus, being some $40,000 shy, the bank will necessarily have to seek satisfaction by foreclosure upon the properties titled in the names of the individuals. One piece of this individually titled property also encumbered by the mortgage is acreage; the other is the personal residence and alleged homestead. It is uncertain at this point [if the bank is allowed to first avail itself of the value of the property titled in the corporation's name] whether the remainder of its debt can be fully satisfied by the clearly non–homestead property titled in the names of the individuals without resort to the alleged homestead property.

The defendant asserts that the total value of all of the bank's security far exceeds the debt owed to it; that marshaling should be ordered in this circumstance; and, that, as a result the bank will substantially satisfy its debt out of the other real estate encumbered leaving the substantial balance of the value of the real estate titled in the name of the corporation to be applied in satisfaction of the claims of its creditors. The defendant relies mainly upon *In re Green's Fashions*, 597 F.2d 130 (8th Cir. 1979), 5 Bankr.Ct.Dec. 193, and the rationale of the 1978 decision of the Supreme Court of Wisconsin in *Moser Paper Co. v. North Shore Publishing Co.*, 83 Wis.2d 852, 266 N.W.2d 411 (1978), and the earlier decision of that court in *C. Gotzian & Co. v. Shakman*, 89 Wis. 52, 61 N.W. 304 (1894). See also, *Consumers Time Credit, Inc. v. Remark Corp.*, 248 F.Supp. 158 (E.D.Pa. 1965).

 There is no doubt that marshaling may be ordered by the court in appropriate cases. *Houston v. Phillips*, 189 F.2d 115 (5th Cir. 1951); *Merchants & Mechanics' Bank v. Sewell*, 61 F.2d 814 (5th Cir. 1932). The bank, however, contends that marshaling is not appropriate in the instant case relying upon the general rule that for marshaling to be appropriate, ordinarily, the debtor has to be the debtor of both creditors and the funds sought to be marshaled must belong to that common debtor. See, 53 Am.Jur.2d, *Marshaling Assets*, § 9. The bank argues that the individuals herein were merely guarantors of the corporate obligation without any liability to the corporation's trade or other creditors and, accordingly, the funds sought to be marshaled are the properties of different debtors. That is to say, that the office building and 23 acre tract of real estate belong to the corporation while the 80 acre tract and residence belong to the individuals who are only guarantors of the corporate obligations of the bank and who have no personal liability to other corporate creditors.

The doctrine of marshaling assets is an equitable principle upon which the legal rights of creditors are controlled in order to accomplish an equitable distribution of funds in accordance with the superior equities of different parties entitled to share therein. The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not by his application of them to his demand defeat another creditor who can resort to only one of the funds. It springs from the principle that a lienor or encumbrancer who is entitled to satisfaction of his demand of either of two funds, called the paramount or senior creditor, shall not so exercise his election as to exclude a party who is entitled to resort to only one of the funds, called the junior creditor. The equity of marshaling may be enforced either by injunction against the paramount creditor, or by subrogation in favor of the junior creditor. Whitney, *The Law of Modern Commercial Practices* (2d ed. 1965).

 In the absence of independent and separate equities, the doctrine of marshaling does not apply unless the litigants are (1) creditors of the same debtor and (2) the funds are assets [the rights to which are sought to be controlled by marshaling] in the hands of and owned by such common debtor. *Moser Paper Co. v. North Shore Publishing Co., supra*. 53 Am.Jur.2d, *Marshaling Assets*, § 9.

The principle that the property of one who has no legal duty or liability to another cannot be subjected to the claim or demand

of such a claimant seems so obvious as to require no more than passing comment. As this general rule has sometimes been stated, inasmuch as a corporation is an entity distinct from its stockholders or officers, as between a senior creditor of the corporation, who can also look to its stockholders or officers if he has a guaranty, and a junior creditor who has no guaranty and thus can look only to the corporate assets, the necessary condition of a common debtor does not exist, absent a basis for disregarding the corporate entity. It has likewise been stated that the necessary condition of a common debtor does not exist where the assets of a partnership constitute one of the funds and the individual property of a partner constitutes the other fund, unless the partner has become entitled in equity to the partnership assets, and primarily liable for the partnership debts. See, 53 Am.Jur.2d, *Marshaling Assets*, § 10 and cases cited therein.

Yet, as indicated in the foregoing statements, in certain instances equity may require another result. One such instance occurs when a corporate veil is pierced with the result that liability is deemed to exist upon the application of equitable principles and property titled in the names of individual stockholders is subjected to the claims of the creditors of the erstwhile corporate entity. Another such instance occurs when property titled in the names of individuals is deemed in contemplation of equity to have been contributed to the capital of a corporation or partnership. *Moser Paper Co. v. North Shore Publishing Co.*, 83 Wis.2d 852, 266 N.W.2d 411 (1978); *C. Gotzian & Co. v. Shakman*, 89 Wis. 52, 61 N.W. 304 (1894).

The requirement that there must be a common debtor with liability to the creditors involved and their claims is but an expression of the fundamental equitable principle that marshaling may be invoked "only when it will benefit the claimant without injuring others" and the right or equity of marshaling may be pursued "until it meets another of equal or superior rank." 53 Am.Jur.2d, *Marshaling Assets*, § 7, p. 15.

Obviously a stockholder of a corporation normally has no liability to any of its creditors other than the limited liability as to the initial contribution of capital. He is not a debtor with respect to its creditors. His right of limited liability is, in the absence of a piercing of the corporate veil, superior to any claim of a creditor solely of the corporation that such stockholder's personal assets should be marshaled to satisfy corporate obligations. If the veil is pierced in equity, his right or equity of limited liability, at that point, may be deemed to be of inferior rank to the equitable right of the corporation's creditors that his personal assets be marshaled. In such event, his personal assets become another fund for satisfaction of corporate obligations.

While a partner normally has no liability to the creditors of a partnership to the extent that partnership assets are available, it is initially recognized that a partner has a legal secondary liability, without any resort to equitable principles, in the event the partnership assets prove insufficient to pay all partnership creditors. However, until such secondary liability ripens to primary liability upon the development of an insufficiency of available partnership assets, the partner has the right, upon equitable principles, to require that the primary or principal debtor's property [i. e. the partnership] be made to satisfy the partnership obligations before any resort is made to the partner's individual property. Before his secondary liability becomes primary, the right in equity to require first satisfaction from the principal's assets is a right equal or superior in rank to the right of partnership creditors seeking to marshal.

If a stockholder guarantees a corporate obligation to one particular creditor, he assumes absolutely no liability to other corporate creditors, and, ordinarily, his property is not subject to the claim of any creditor of the corporation other than the creditor who has received the guaranty. In addition, this liability to the particular creditor is only secondary to the primary liability of the principal debtor [the corporation]. As such, the stockholder–guarantor has a

right in equity that his principal's property first be made to satisfy the obligation he has guaranteed to the particular creditor before any resort is made to the guarantor's property. Here again, absent unusual equitable circumstances, this right in equity to require first satisfaction from the principal's assets is a right equal or superior in rank to the right of the corporate creditors seeking to marshal. Compelling the paramount creditor to first seek from the guarantor would interfere with and unjustly impair the guarantor's equitable right to be exonerated by the principal debtor.

As stated in *Moser Paper Co. v. North Shore Publishing Co., supra,* 266 N.W.2d at p. 416:

> "[E]ven though one creditor is secured by the debtor's surety while a second creditor is not, equity will not in the ordinary case compel the secured creditor to exhaust his remedy against the surety before proceeding against the principal debtor." 135 A.L.R. 738 (1941).

Where the second asset or fund that a senior creditor may look to for the payment of his debt is the property of a person [guarantor or surety] who is not obligated to, nor the debtor of, the creditor seeking to marshal, such person may have rights or equities which would render it unjust and inequitable to direct marshaling. See, 53 Am.Jur.2d, *Marshaling Assets,* § 9. This is ordinarily the case where there has been a guaranty of a nonbusiness related debt of a principal debtor. Being nonrelated to the initiation or continuation of any business, the only effect on or inducement as to creditors of the principal debtor which might in any way be chargeable to such guarantor, is related only to the creditor who lends on the strength of the guarantor's personal liability and any property which the guarantor may have specifically pledged to secure his guaranty.

Contrary to this situation, however, is that typified by the *Moser Paper, Gotzian* and *In re Green's Fashions* cases where there has been a guaranty of a business debt for the purpose of obtaining working capital to either initiate or continue the operation of the business. Here, the foreseeable and likely result of obtaining such working capital, partly on the strength of the guarantor's personal liability and any property which the guarantor may have specifically pledged to secure such guaranty, is the inducement of others to innocently commence or continue to extend supplies or services to the principal on credit.

Upon the failure of the business and in a marshaling context, the balance of equities tips in favor of the creditors of the principal as against the guaranty claimant with respect to any individually owned property which was specifically pledged to secure the guaranty and obtain working capital. Unlike the ordinary nonbusiness related guaranty case, here, the courts, in view of the "additional equitable considerations", conclude that the individually owned property must be regarded in equity as a contribution to capital. *Moser Paper Co. v. North Shore Publishing Co.,* 83 Wis.2d 852, 266 N.W.2d 411 (1978); *Gotzian & Co. v. Shakman,* 89 Wis. 52, 61 N.W. 304 (1894). If regarded in equity as contributions to capital, the rule of marshaling that there must be a common debtor with the funds being sought belonging to that common debtor is satisfied. Being deemed a contribution to capital, there would also, by reason thereof, be no right to exoneration or right to contribution by the guarantor from the principal. As stated by the court in *Moser* [also quoting from its earlier *Gotzian* decision], 266 N.W.2d at p. 417:

> "In form, it was a security given by a partner upon his individual property; in fact, it was a contribution to the capital of the firm. This plainly constitutes what is termed by Story (1 Eq.Jur., sec. 645) a 'supervening equity which must be considered,' and, when considered, it plainly brings the case within the rule, because the two funds are thus, in the contemplation of equity, both partnership funds." 89 Wis. at 59, 61 N.W. at 306.

Here as in *Gotzian* the money loaned to the individuals was used for working capital for the business. In transactions that permitted North Shore, Polka, and Frey

to stay in business until the business was purchased by the Community Newspapers, Inc., Polka and Frey guaranteed the obligations of North Shore, and North Shore guaranteed the obligations of Polka and Frey. In the spring of 1974 after default, all of these obligations had ripened to absolute liability. Most important of all, the mortgages executed by the Freys and the Polkas by their very terms secured the obligations of North Shore directly. Although record title to the residences remained in the hands of Polka and Frey, in the eyes of equity the Polkas and the Freys had placed their residences in the company till. We hold that under these circumstances the mortgages created a fund which equity will consider a fund of North Shore itself. Under these circumstances, the marshaling of assets doctrine is appropriate."

Another facet of this controversy which must be addressed is the contention of the plaintiff bank that another competing equitable principle is also involved which dictates that marshaling should not be directed herein. This relates to that portion of the additional individually titled collateral held by the bank alleged to be homestead property.

■ Absent the pledging of exempt property in connection with the obtaining of working capital for a business, the prevailing view is that the right of a homestead or other exemption claimant is superior to the right of a junior creditor seeking to marshal and thereby cause the paramount creditor to first resort to the exempt property so that nonexempt property is left available. Since creditors, even armed with judgment liens, cannot ordinarily reach exempt property, the effect of marshaling with respect to such exempt property would be to destroy state–created homestead exemptions and, by indirection, permit creditors who otherwise could have no effect upon such exempt property to materially affect such property by the equitable doctrine of marshaling. This would run contrary to the exemption policies of the states. *Meyer v. United States*, 375 U.S. 233, 84 S.Ct. 318, 11

L.Ed.2d 293 (1963); 53 Am.Jur.2d, *Marshaling Assets*, § 25.

When weighing the equities between parties to determine the applicability of the marshaling doctrine, in the absence of additional and countervailing equitable considerations, the exemption policies of the states tilt the equities in favor of the exemption claimant. But this result of the weighing of the equities has no application in the situation where property otherwise exempt has been pledged along with business assets to secure working capital for the initiation or continuation of such business. Here again, there are the same other countervailing equitable considerations as have been recognized hereinabove. The foreseeable result of obtaining such working capital, in part by the pledging of exempt property, is the likely inducement of others to innocently commence or continue to extend supplies or services to the principal on credit. The exempt property so pledged must, in light of all of the equities, be regarded as a contribution to capital. *Moser Paper Co. v. North Shore Publishing Co., supra; In re Green's Fashions*, 597 F.2d 130 (8th Cir. 1979).

The final point to be considered is the contention of the plaintiff bank that, even if marshaling is otherwise appropriate, it is well settled that it should not be ordered if the rights of the paramount creditor will be endangered or injuriously delayed and there is reasonable doubt as to the availability of the other fund to satisfy his demand. 53 Am.Jur.2d, *Marshaling Assets*, § 13.

The bank forcefully argues that there will be substantial, rather than mere normal, delay in any foreclosure with respect to the residence titled in the names of the individuals. Notwithstanding any order of the court directing the bank to marshal, counsel anticipates the assertion by the defendants in foreclosure that the exemption policy of the state dictates that all nonexempt property must be first resorted to before any foreclosure upon exempt property. As a result, it is contended that the matter will, perhaps, be tied up interminably in litigation in the state courts and

that it will be unjust for the bank to be made to forego being paid any of its debt from its mortgage on the corporate property and await the outcome of what may be more than an ordinary foreclosure action. The defendant counters that the bank is more than substantially secured and that it will continue to have interest accrue upon its debt until paid in full.

In view of the circumstances, this court is inclined to agree with counsel for the bank. However, the equity of marshaling may be enforced either by way of injunction [direction] with respect to the paramount creditor for the benefit of the junior creditor [defendant herein], or by subrogation in favor of such junior creditor. *Merchants & Mechanics' Bank v. Sewell*, 61 F.2d 814 (5th Cir. 1932); *In re Picardo*, 4 Bankr.Ct.Dec. 1011 (W.D.Pa.1978); 53 Am.Jur.2d, *Marshaling Assets*, § 43; Whitney, *The Law of Modern Commercial Practices* (2d ed. 1965).

Where a creditor who has a lien upon two funds satisfies out of the only fund to which a junior creditor can look thereby depriving said junior creditor of his only security,

> "Equity will decree that the junior encumbrancer, to the extent of the security which has thus been lost, will, as against the debtor and all claiming under him, be substituted to the lien of the paramount encumbrancer in the singly charged fund. 53 Am.Jur.2d, *Marshaling Assets*, § 43 and cases cited."

■ Rather than having the proceeds of any sale of the property titled in the name of the corporation held in escrow pending the resolution of any foreclosure upon the properties titled in the names of the individuals, the plaintiff's lien should be paid to the extent of the proceeds available from the property titled in the corporate name, less a reasonable minimum reserve to be determined, and its lien instead of being diminished by the amount of said payment should be and will be preserved by the order of this court and transferred to the defendant herein under its right to be equitably subrogated to the plaintiff's lien. *In re Picardo*, 4 Bankr.Ct.Dec. 1011 (W.D.Pa. 1978).

In this fashion, as so equitably subrogated, the defendant may participate as a party in any action to foreclose upon or otherwise seek satisfaction from the properties deemed herein to constitute contributions to capital. It is also noted that in the event any such action is sought to be removed by any party under Section 1478(a) of Title 28 of the United States Code [eff. Oct. 1, 1979, Sec. 404(a) and 404(b), Pub.L.No. 95–598, 92 Stat. 2683 (1978)], this court would have jurisdiction pursuant to Section 1471(b) of Title 28 of the United States Code [eff. Oct. 1, 1979, Sec. 404(a) and 404(b), Pub.L.No. 95–598, 92 Stat. 2683 (1978)]. *United Companies Financial Corporation v. Brantley*, 6 B.R. 178, 6th Bankr.Ct.Dec. 932 (Bkrtcy.N. D.Fla.1980).

Appropriate order shall be submitted in accordance herewith.