# IN THE COURT OF APPEALS OF IOWA

No. 16-0118
Filed March 22, 2017

**TED A. TORSTENSON, Individually, and**
**TOBY T. TORSTENSON, Individually,**
    Plaintiffs/Counterclaim Defendants-Appellants,

**vs.**

**BIRCHWOOD ESTATE, L.L.C.,**
    Defendant/Counterclaim Plaintiff-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, David M. Porter,

Judge.


    Ted and Toby Torstenson appeal from the district court's ruling on their

claim for reimbursement against Birchwood Estate, L.L.C.  **REVERSED AND**

**REMANDED WITH INSTRUCTIONS.**



    David Swinton, Steven P. Wandro, and Brian J. Lalor of Wandro &

Associates, P.C., Des Moines, for appellants.

    Allison M. Steuterman and Douglas A. Fulton of Brick Gentry, P.C., Des

Moines, for appellee.


    Heard by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**DANILSON, Chief Judge.**

Ted and Toby Torstenson appeal from the district court's ruling on their claim for reimbursement against Birchwood Estate, L.L.C. (Birchwood) for payments made by the Torstensons on behalf of Birchwood under personal guaranties. We conclude the Torstensons were entitled to reimbursement from Birchwood for the amounts paid under the Torstensons' personal guaranties. We further conclude the district court erred in considering the law of contribution among co-guarantors, finding Tierra Linda, L.L.C. (TL) breached a fiduciary duty to Birchwood, piercing the corporate veil of TL and holding the Torstensons personally liable, and awarding the money in dispute to the members of Central Iowa Developers, L.L.C. (CID), who were not parties to the suit. We therefore reverse the ruling of the district court and remand for entry of judgment in favor of the Torstensons.[1]

### I. Background Facts & Proceedings.

Birchwood is a limited liability company established in 2004 for the purpose of purchasing and developing the Birchwood Estate Property in Winterset. Birchwood consists of two members: CID and TL.[2] CID is a limited

---

[1] We acknowledge Birchwood filed a motion to strike the Torstensons' final reply brief due to noncompliance with Iowa Rule of Appellate Procedure 6.904(4)(b). At oral argument, counsel for the Torstensons conceded the motion to strike should be granted for the reasons stated in the motion. Accordingly, we have disregarded the Torstensons' reply brief.

[2] As to the members of Birchwood, the operating agreement states, "THIS AGREEMENT is among Central Iowa Developers, L.L.C. and Tierra Linda, L.L.C. (the 'initial Members'); Birchwood Estates, L.L.C., an Iowa limited liability company (the 'Company'); and other persons who hereafter become additional or substitute members (together with the initial Members the "Members") under the terms of this agreement." At the time Birchwood was formed, CID had four members including Michael Knapp, William Kline, James Koolhof and Dan Cornelison. TL initially had three members including Ted and

liability company with three members: Michael Knapp, James Koolhof, and William Kline. TL is also a limited liability company and has two members: Ted and Toby Torstenson.

In March 2004, Birchwood executed a promissory note in the amount of $1,700,000 secured by a mortgage on the Birchwood Estate Property and by unconditional guaranties signed by CID and TL. CID and TL each made a capital contribution of $25,000 to Birchwood. Ted Torstenson testified it was his belief at the outset of the business endeavor that after the original capital contributions Birchwood would be able to cover its own debt service and expenses from money earned selling lots on the property. Koolhof testified there was no expectation CID or TL would have assets beyond the $25,000 capital contributions and it was also the intent for CID to be able to "cash flow to the greatest degree possible from loans from the bank and sales from the property."

From 2004 to 2006, the proceeds from lot sales covered Birchwood's payments on the promissory note and expenses as expected. However, in 2006, the real estate market collapsed and lot sales slowed. Because Birchwood had no assets other than the property, it could not pay the amounts due on the promissory note. CID and TL began making payments to Birchwood on an alternating basis to make the requisite payments on the note. This arrangement continued until mid-2010 when TL stopped making payments to Birchwood. CID continued making payments to Birchwood and, in April 2011, paid an impairment payment to the bank in the amount of $387,107.09 to extend the note. However,

Toby Torstenson and Jason Reels. Cornelison and Reels are no longer associated with CID and TL.

according to Birchwood's exhibit, "Birchwood Estates Capital Contributions," CID also eventually stopped capitalizing Birchwood in November 2014. In 2012, in order to prevent the note from going into default, Knapp and his wife purchased the note for the outstanding principal balance of $426,615.53 plus interest.

In order to effectuate an extension of the note in 2007, the members of CID and TL—Knapp, Koolhof, Kline, and each of the Torstensons—had made personal guaranties securing the note. After Birchwood became unable to continue making payments on the note, Knapp and his wife brought suit in August 2013 against TL and each of the Torstensons individually to enforce the guaranties. In a September 30, 2014 settlement agreement reached by the parties to the action, TL and the Torstensons agreed to pay $245,287.05 to Knapp and his wife pursuant to their obligation as guarantors and $189,440.95 to CID for a portion of the impairment payment.[3]

Subsequently, on December 3, 2014, the Torstensons filed this action against Birchwood for reimbursement of money paid to Knapp and his wife on the guaranties. On March 29, 2015, Birchwood filed an answer and counterclaim against the Torstensons alleging the Torstensons caused Birchwood to default on the loan by failing to capitalize TL in order to continue making payments to Birchwood. Birchwood noted CID had made payments to Birchwood amounting to $733,090.74, while TL had only contributed $520,381.86, leaving a deficit of $212.708.88. Birchwood asserted the proceeds of the final sales of Birchwood Estate Property lots should be paid out to the members in a manner equalizing the capital accounts, providing reimbursement to the Torstensons under the

---

[3] Birchwood was administratively dissolved in 2015.

guaranties would result in unjust enrichment, and the Torstensons breached their fiduciary duty to Birchwood by attempting to obtain funds from Birchwood without satisfying the obligations of TL to Birchwood and CID.

The district court acknowledged under Iowa law a guarantor is entitled to reimbursement when the guarantor pays the debt of the principal obligor. *See Hills Bank & Tr. Co. v. Converse*, 772 N.W.2d 764, 772 (Iowa 2009). However, the court stated, "the Torstensons' claim has run aground on contrary authority dealing with [the] law on co-guarantors." The court determined "[t]he member paying a lesser contribution is liable for equalization of the burden or payments." Citing *Farmers & Merchants Bank v. Gibson*, 7 B.R. 437, 411 (Bankr. N.D. Fla. 1980) and *In re Vermont Toy Works, Inc.*, 82 B.R. 258, 316-17 (Bankr. D. Vt. 1987), the court determined the "[p]ayments made by the Torstensons, Knapp, Koolhof, and Kline, under the guaranties, were more capital contribution/payments of expenses than guarantor payments." The court held:

> As a capital contribution/expense, there would be no right to exoneration or right to contribution by the guarantor from the principal . . . [therefore] the Torstensons would not stand as general creditors seeking payment of a debt, but rather as a member seeking their fair share of distribution of the company's assets based on their proportionate contributions to Birchwood.

Citing Iowa Code section 489.403 (2014), the court further held TL was responsible for reimbursement or equalization of capital contributions or expenses paid by CID and CID's members and the Torstensons were liable by way of piercing the corporate veil. The court reasoned:

> By failing to adequately capitalize TL and subsequently assist in the adequate capitalization of Birchwood, the Torstensons breached their duty of care and failed to exercise care that a person in a like position (i.e., Knapp, Koolhof, and Kline as members of

CID) would reasonably exercise under similar circumstances and in a manner the member reasonably believes to be in the best interests of the company.  TL was obligated to continue to make equal capital contribution/call payments and is liable for the payments made on behalf of CID.  The Torstensons simply cannot argue that their current demand for reimbursement is in Birchwood's best interests, considering it was their inability [to] adequately capitalize TL, which caused TL to be unable to continue contributing to the capital calls/contributions for Birchwood, which caused Birchwood to ultimately default on the Note.

Simply put, Birchwood is equitably obligated to pay CID, which made payments on the Note on its behalf.  CID has made significant capital contributions over and above those of TL ($733,090.74 vs. $520,381.86) and attempts by the Torstensons, the sole members of TL, to obtain an equal share of any proceeds of [Birchwood] would unjustly enrich them.

The court therefore ordered:

The $114,000[4] held in trust pending this action shall be paid out to the debts of Birchwood Estate, L.L.C. as follows:
1. First toward attorneys' fees incurred in defending Birchwood in this action;
2. Second to members [of] CID for amounts expended in excess of the amounts expended by TL for expenses/capital contributions so as to even out contributions and expenses paid ($212,708.88); and
3. Finally, any remainder to all members, equally.

The Torstensons now appeal.

**II. Standard of Review.**

Both parties agree this case was filed and tried at law.  We review an action at law for correction of errors at law.  *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 179 (Iowa 2010).  "Under this standard of review, the trial court's findings carry the force of a special verdict and are binding if supported by substantial evidence."  *Id.*  However, "the district court's legal conclusions and

---

[4] As explained at oral argument, the parties agreed to place one half of the assets of Birchwood—$114,000—into escrow pending the outcome of the case.  The Torstensons seek a judgment in the sum of $114,000.

application of legal principles are not binding on the appellate court." *Land O'*
*Lakes, Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000). "If 'the trial court has
applied erroneous rules of law [that] materially affected its decision,' we must
reverse on appeal." *Id.* (alteration in the original) (citation omitted).

Because unjust enrichment is an equitable remedy, our review of its
application to these facts is de novo. *Iowa Waste Sys., Inc., v. Buchanan Cty.*,
617 N.W.2d 23, 30 (Iowa Ct. App. 2000).

**III. Analysis.**

The Torstensons raise three issues on appeal: (I) whether the district court
erred in rejecting the Torstensons' claim for reimbursement from Birchwood for
their payments under the guaranties; (II) whether the district court erred in
applying the law regarding contribution among co-guarantors; and (III) whether
the district court erred in piercing the corporate veil of TL and holding the
Torstensons responsible for breach of fiduciary duty allegedly owed to
Birchwood.

*(I) Reimbursement.* The Torstensons first contend they are entitled under
Iowa law to reimbursement for payments made on the guaranties executed on
behalf of Birchwood.

In *Hills Bank & Trust Co.*, the supreme court adopted the position of
Restatement (Third) of Suretyship and Guaranty section 22 on the issue of
reimbursement and held, "Under the Restatement, when a principal obligor has
notice of the secondary obligation, the principal obligor has the duty to reimburse
the secondary obligor to the extent the secondary obligor is called upon to
perform, or if the secondary obligor settles with the obligee." 772 N.W.2d at 772.

Under these facts, Birchwood is the principal obligor, having executed the promissory note, and the Torstensons are secondary obligors, having executed personal guaranties to pay when the principal obligor was unable to do so. Thus, the Torstensons' claim for reimbursement is supported by Iowa law. *See Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 743 (Iowa 2009) ("When a creditor bypasses the assets of a debtor and collects the debt from a guarantor under the terms of a personal guaranty, the guarantor may assert rights of reimbursement against the debtor to recoup the amount paid on the guaranty.").

Neither party disputes Iowa law provides a remedy for a guarantor to seek reimbursement from the principal obligor when the guarantor pays a debt owed by the principal obligor. The Torstensons, as individuals, made payments on behalf of Birchwood under their personal guaranties. In the petition, the Torstensons, as individuals, sought reimbursement for amounts paid pursuant to the guaranties via the settlement agreement. The settlement agreement identified Knapp's claim against the Torstensons was for breach of guaranty and required the Torstensons to pay $245,287.05 to Knapp upon execution of the settlement agreement.[5] The settlement amount was paid to Knapp as assignee of the note by the Torstensons under their obligations as guarantors. As such, the Torstensons are entitled to reimbursement from the principal obligor, Birchwood.

---

[5] To the extent the Torstensons sought reimbursement for money paid to CID for contribution to the impairment payment, we note *Hills Bank & Trust Co.*, 772 N.W.2d at 772, and the Restatement (Third) of Suretyship & Guaranty section 22 does not provide for reimbursement.

The district court erred in applying *Farmers & Merchants Bank*, 7 B.R. at 441, and *Vermont Toy Works, Inc.*, 82 B.R. at 316-17, 329-33, and concluding payments made by the Torstensons under the guaranties were actually capital contributions or payments of expenses. Both cases dealt specifically with the doctrine of marshaling, which relates to secured creditors and is not at issue in this case. *See Farmers & Merchs. Bank*, 7 B.R. at 441 ("[I]n a *marshaling context*, the balance of equities tips in favor of the creditors of the principal as against the guaranty claimant with respect to any individually owned property which was specifically pledged to secure the guaranty and obtain working capital."(emphasis added)); *see also Vt. Toy Works, Inc.*, 82 B.R. at 319 (explaining the analysis relates to "the contributions to capital exception to marshaling").[6] Further, *Farmers & Merchants Bank* was subsequently vacated by *Peacock v. Gibson*, 7 B.R. 437, 443 (Bankr. N.D. Fla. 1980), and *Vermont Toy Works, Inc.*, was reversed in *In re Vermont Toy Works, Inc.*, 135 B.R. 762, 773 (D. Vt. 1991). Thus, there is no support for the district court's determination that the payments made by the Torstensons under the guaranties were actually capital contributions or payments of expenses.

---

[6] The doctrine of marshaling

> is applied when two or more secured creditors claim against one debtor and the senior secured creditor can reach two or more of a debtor's property interests or funds while the junior secured creditor may reach only one. By forcing the senior secured creditor to elect the fund which is not subject to satisfaction by the junior secured creditor, both the junior and senior secured creditors may realize satisfaction of their respective claims against the common debtor.

*Vt. Toy Works, Inc.*, 82 B.R. at 290.

The payments made by the Torstensons to Knapp under the settlement agreement were payments under the Torstensons' guaranties, and the Torstensons are thus entitled to reimbursement.

*(II) Contribution.* The Torstensons next claim the district court erred in considering the law of contribution among co-guarantors in reaching its determination in this case. The Torstensons assert application of the law on co-guarantor contribution is improper because none of the co-guarantors are parties to the lawsuit.[7] More importantly, the Torstensons further point out each of the co-guarantors released any claims for contribution related to payment of the guaranties under the settlement agreement in the previous lawsuit. Thus, the Torstensons' assert there is not, and cannot be, a claim by any of the co-guarantors against the Torstensons for contribution and "the law governing contribution among co-guarantors simply has no bearing on [their] claim against Birchwood."

Birchwood argues the district court correctly considered the law on contribution among co-guarantors in addition to the law regarding reimbursement from the principal obligor. Birchwood also asserts the district court correctly found CID was entitled to reimbursement of capital contributions or expense payments from Birchwood and TL and, ultimately, from the Torstensons.

---

[7] On September 15, 2015, CID, Knapp, and Koolhof filed a motion to intervene and/or join as indispensable parties to the lawsuit. The motion was denied. The district court noted that a trial scheduling order filed March 27, 2015, stated "[n]o new parties may be added later than 180 days before trial." The district court denied the motion to intervene and/or join because it was filed less than sixty days before trial and was untimely. The court stated "the prospective intervenors may have been permitted to intervene under [Iowa Rule of Civil Procedure] 1.407(2) *if* a timely application had been made. The court does not find that the prospective intervenors are 'indispensable parties' as defined in rule 1.234."

Birchwood contends any other outcome would result in the unjust enrichment of the Torstensons.

We find the district court also erred in considering contribution in this case. While under Restatement (Third) of Suretyship and Guaranty section 55 "each cosurety has the right of contribution against other cosureties," *Hills Bank & Trust Co.,* 772 N.W.2d at 772-73, the Torstensons correctly assert contribution is not at issue in this matter. The co-guarantors were not joined as parties to this case, and any error in the district court's ruling on the motion to intervene and/or join was not raised on appeal. More importantly, under the settlement agreement, Knapp and his wife agreed to

> [r]elease, acquit and discharge Tierra Linda, the Torstensons, CID, Kline, and Koolhof from any and all Claims that Ellyn and Knapp may now or hereafter have against the Torstensons, including but not limited to any and all Claims or defenses that were brought or could have been brought in the Civil Case related to the amounts due and owing under the Note, Guarantees and Impairment Payments.

Koolhof and Kline agreed to identical releases in the agreement.

Despite the fact that CID, Knapp, Koolhof, and Kline were not parties to the lawsuit, the district court ultimately awarded the $114,000 at issue to be paid to the members of CID to equalize deficient capital accounts. Absent intervention or joinder of the co-guarantor parties,[8] or Birchwood's bringing an

---

[8] The other co-guarantors would also have a right to reimbursement from Birchwood for any payments made under their guaranties. However, they did not properly join this action. Birchwood remains in possession of approximately an additional $114,000.

action for interpleader,[9] the court erred in entering judgment in favor of CID, Knapp, Koolhof, and Kline who are not parties to the case.[10]

*(III) Breach of Fiduciary Duty and Piercing the Corporate Veil.*  Last, the Torstensons contend the district court erred in piercing the corporate veil and holding the Torstensons personally responsible for breach of fiduciary duty allegedly owed to Birchwood.

*A. Breach of Fiduciary Duty.*  The Torstensons assert this matter involves only Birchwood and not the Torstensons in their individual capacity.  The Torstensons therefore contend they did not individually owe a fiduciary duty to Birchwood.

The district court relied upon Iowa Code sections 489.409 and .403 to hold TL's refusal to continue making capital contribution payments constituted a breach of fiduciary duty and the duty of care to Birchwood and CID.  Section 489.409(3) provides, in relevant part,

> the duty of care of a member of a member-managed limited liability
> company in the conduct and winding up of the company's activities
> is to act with the care that a person in a like position would

---

[9] Iowa Rule of Civil Procedure 1.251 provides, "A person who is or may be exposed to multiple liability or vexations litigation because of several claims against the person for the same thing, may bring an equitable action of interpleader against all such claimants." Iowa Rule of Civil Procedure 1.252 also permits "[a] defendant to an action exposed to similar liability or litigation [to] obtain interpleader by counterclaim or cross-petition.  Any claimant not already before the court may be brought in to maintain or relinquish that claim to the subject of the action, . . ."  In support of its request that the proceeds of the final sales of Birchwood Estate Property lots be paid out to the members in a manner equalizing the capital accounts, Birchwood could have brought an action for interpleader adding TL, CID, and CID's members to the case.  However, Birchwood did not do so.

[10] To render a binding judgment, a court must have both subject matter and personal jurisdiction over the case.  *See Schott v. Schott*, 744 N.W.2d 85, 87-88 (Iowa 2008); *see also Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 583-84 (Iowa 2015).  "A judgment may be considered void where the court acted without or in excess of its jurisdiction." *McCourt Mfg. v. Rasmussen*, No. 09-1483, 2010 WL 3894485, at *3 (Iowa Ct. App. Oct. 6, 2010) (citation omitted).

reasonably exercise under similar circumstances and in a manner the member reasonably believes to be in the best interests of the company.

The district court held:

By failing to adequately capitalize TL and subsequently assist in the adequate capitalization of Birchwood, the Torstensons breached their duty of care and failed to exercise care that a person in a like position (i.e. Knapp, Koolhof, and Kline as members of CID) would reasonable exercise under similar circumstances and in a manner the member reasonably believes to be in the best interest of the company.

The district court also noted Iowa Code section 489.403 relating to a member's liability for contributions provides, "A person's obligation to make a contribution to a limited liability company is not excused by the person's death, disability, or other inability to perform personally." The district court determined "[w]hether the payments were capital contributions or expenses, under Iowa law, TL is responsible for reimbursement/equalization of such contribution/expense payments and is now liable" under section 489.403.

We conclude the court erred in holding TL, and thereby the Torstensons, liable for failing to continue making capital contributions and determining the Torstensons, as individuals, owed a fiduciary duty to Birchwood. It is significant that the settlement payments were made by the Torstensons as individuals pursuant to their individual personal guaranties. As individuals, the Torstensons had no obligation to make capital contributions to Birchwood because they were not members of Birchwood. Rather, the Torstensons were members of TL. Any capital contributions were solely the responsibility of TL and CID. The settlement agreement does not recite that the guaranty payments shall constitute capital contributions on behalf of TL. None of the statutory methods to become a

member of a limited liability company apply to the Torstensons.[11]   Because the Torstensons were not members of Birchwood, they owed no fiduciary duty to Birchwood.

Moreover, a member of a limited liability company is not always obligated to make contributions.  *See* Iowa Code § 489.401(5) ("A person may become a member without . . . being obligated to make a contribution to the limited liability company.").  The operating agreement dictates the initial contribution, if any, as well as subsequent required contributions.  *See id.* § 489.110(1)(a) (providing the operating agreement governs "[r]elations among the members as members and between the members and the limited liability company"); *see also id.* § 489.111(1) ("A limited liability company is bound by and may enforce the operating agreement, . . .").

Under the terms of Birchwood's operating agreement, TL was not required to continue making capital contributions and was not to be held responsible for equalizing the capital accounts.   Section 5.01 of Birchwood's operating agreement provides, "The Company's initial capital shall consist of cash or property to be contributed by the initial Members in the amounts indicated on Exhibit A.  Additional calls for capital may be agreed upon by a majority of the Members."  And Section 5.03 provides:

> Except as provided in Article IX, a Member is not entitled to demand or receive the return of any Capital Contribution prior to the Company's dissolution and winding up.   In the event of a dissolution and winding-up, no Member shall receive out of the Company's property any part of its Capital Contribution until all liabilities of the Company, except liabilities to Members on account

---

[11]  *See* Iowa Code § 489.401(4)(a) (providing a person becomes a member of a limited liability company "[a]s provided in the operating agreement").

of their Capital Contributions, have been paid or there remains property in the Company sufficient to make such payments.

Further, section 5.04 states, "No Member shall be obligated to satisfy a negative Capital Account balance." Section 9.03 regarding termination and dissolution of the company provides:

> The Members shall look solely to the assets of the Company for the return of their capital contributions, and if the assets of the Company remaining after payment or discharge of the debts and liabilities of the Company are insufficient to return such capital contributions, they shall have no recourse against any other Members for such purpose.

And section 3.04 of Birchwood's operating agreement provides, "No Member shall be personally liable for any debts or obligations of the Company unless otherwise required by the Act."

Ted Torstenson testified it was his understanding by agreeing to these provisions that TL would not be required to make capital contributions without TL's consent. The district court held that TL and the Torstensons "waived their right to later contest the validity of additional capital contributions" by failing to attend meetings after they stopped contributing funds to TL to make payments to Birchwood in order to satisfy the note. However, section 5.01 expressly states capital contributions may be required only as agreed upon by the members, and there is no dispute TL remained a member notwithstanding the lack of representation at the meetings. Prior to discontinuing payments to Birchwood, the Torstensons explained TL could not keep making the payments and no longer assented to the capital contributions. TL's agreement was necessary to require further capital contribution payments. The provision of section 5.01 could only be amended by "the unanimous approval of the Members to amend the

terms of the operating agreement" pursuant to section 4.07(b)(v). The section was not amended.

Under the terms of the operating agreement, TL was not obligated to continue making capital contributions, and TL and the Torstensons' failure to continue making such payments does not constitute a breach of fiduciary duty or the duty of care. The Torstensons were not members of Birchwood and owed no fiduciary duty to Birchwood. Only the members of Birchwood—TL and CID— were obligated to comply with the duties created by the operating agreement. The operating agreement provides no basis to offset a personal guarantor's reimbursement for payment made under a guaranty by a member's obligation for expenses, costs, damages, or a member's deficiency in its capital contributions. The court erred in holding the Torstensons personally liable for breach of fiduciary duty.[12]

*B. Piercing the Corporate Veil.* The Torstensons also argue the decision to pierce the corporate veil in this case was not supported by substantial evidence because TL was properly capitalized at the time of formation and TL was handled in a manner consistent with its existence as a separate legal entity.

Birchwood asserts, "The failure of TL to be adequately capitalized, which was the fault of the Torstensons' general practice or otherwise, caused Birchwood to default on the note and the Torstensons should not be allowed to

---

[12] We note section 8.05(b)(2) of the operating agreement provides, in part, "The Member shall, however, remain liable for any obligation to the Company that existed prior to the effective date of the dissociation, including any costs or damages resulting from the Member's breach of this Agreement." But Birchwood has not alleged this provision is applicable to these facts, and TL is not a party to this action.

escape their requisite and proportional liability for the outstanding expenses of Birchwood."

The district court determined TL was obligated to continue making equal capital contributions and is liable for breach of fiduciary duty and the duty of care for failing to do so. The district court then determined it was appropriate to pierce the corporate veil and hold the Torstensons personally liable.

The district court found:

> The Torstensons formed TL for the purpose of having an entity that could be a member of Birchwood. TL did not have its own assets and was only able to make payments on the note via funds or payments from its individual members—Ted and Toby Torstenson. Plaintiffs were the sole owners and provided all capital to TL. Regrettably, TL was not adequately capitalized, which resulted in Birchwood being inadequately capitalized. Based on the testimony of Ted Torstenson, traditional formalities of limited liability entities were not followed, nor did the Torstensons maintain separate books. Because of this, the "corporate veil" can be pierced, and TL can be held liable for the undercapitalization or unequal capitalization.

In respect to piercing the corporate veil, the theory underlying the doctrine is that a "limited liability company is an entity distinct from its members," Iowa Code § 489.104(1), and the separate limited liability company enables the members to limit their personal liability, *see* Iowa Code § 489.304, but "the corporate device cannot in all cases insulate the owners from personal liability." *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 809-10 (Iowa 1978). "The corporate veil may be pierced under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Id.* at 810. "The burden is on the party seeking to pierce the corporate

veil to show the exceptional circumstances required." *In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000) (citing *C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy, Inc.*, 412 N.W.2d 593, 598 (Iowa 1987)).

The factors to be considered when determining whether the corporate veil may be pierced and the individuals held personally liable include:

> (1) the corporation is undercapitalized; (2) it lacks separate books; (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to promote fraud or illegality; (5) corporate formalities are not followed; and (6) the corporation is a mere sham.

*Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 6 (Iowa 2008) (citation omitted).

The problem here is no judgment was awarded against either TL, a nonparty, or the Torstensons, and thus no reason exists to pierce the corporate veil. The doctrine is an equitable remedy to protect creditors. *Minger Const., Inc. v. Clark Farms, Ltd.*, No. 14-1404, 2015 WL 7019046, at *6 (Iowa Ct. App. Nov. 12, 2015) (McDonald, J., concurring) ("The decision to impose liability on a shareholder for corporate obligations where there is no basis for liability at law, is necessarily an equitable remedy . . ." (citation omitted)); *see also Boyd v. Boyd & Boyd, Inc.*, 386 N.W.2d 540, 544 (Iowa Ct. App. 1986) ("[O]ne of the circumstances which may move a court to disregard corporate entity is where limited liability would be inequitable. 6 Hays, *Iowa Practice Business Organizations* § 882 at 298 (1985); Hornstein, *Corporation Law and Practice* § 752 at 265 (1959). Hayes further specifies that '[t]he corporate veil may be disregarded when recognition would work inequitably against one or more groups of creditors of the enterprise . . .' Hayes, § 886 at 308." (alteration in original)).

The doctrine does not entail the assignment or delegation of a fiduciary duty owed by a corporation, or a breach thereof, to its members except as it relates to creditors. Birchwood is not alleged to be a creditor needing to pierce the corporate veil of TL. In fact, Birchwood is more akin to a disinterested entity holding funds that may face multiple claims for the same monies, similar to a party having the right of interpleader,[13] rather than a party seeking payment for some obligation owed to it. *See C.F. Sales, Inc. v. Amfert, Inc.*, 344 N.W.2d 543, 550 (Iowa 1983) ("Interpleader originated in equity as a means by which a disinterested stakeholder of money or property could avoid vexatious litigation with multiple claimants by making them defendants and requiring them to establish their claims among each other to the fund or res." (citing 45 Am. Jur. 2d *Interpleader* § 2 (1969); 48 C.J.S. *Interpleader* § 4 (1981)).) However, Birchwood never brought an action or counterclaim of interpleader, and its efforts to join additional parties, including CID, were denied by the district court.

Further, piercing the corporate veil was unwarranted in this case based on the finding that TL was inadequately capitalized. In determining if the L.L.C. was undercapitalized, "[t]he relevant inquiry is the capital structure of the entity at or near the time of incorporation." *Minger Const., Inc.,* 2015 WL 7019046, at *9. At the time Birchwood was formed, both parties were required to contribute the initial $25,000 capitalization. No other capitalization was expected at that time, as it was the intent of both members that Birchwood would be able to cover its expenses and debt service with income from the sale of portions of the property. When TL and CID were subsequently required to make additional capital

---

[13] *See* Iowa R. Civ. P. 1.251.

contributions, the members of TL paid funds into TL to be paid to Birchwood. The record reveals CID made capital contributions to Birchwood in the same manner. The fact that the Torstensons at some point in time discontinued providing capital to TL so TL could continue providing capital to Birchwood in light of the real estate market crash is not significant to the issue of whether TL was initially inadequately capitalized. Moreover, if all of TL's and the Torstensons' payments were treated as capital contributions as urged by Birchwood, they paid over $520,000 in total, an amount far in excess of the initial expectation that $25,000 was sufficient.

The district court erred in determining the circumstances warranted piercing the corporate veil of TL, a nonparty, and thereby holding the Torstensons personally liable. Under these facts, there is no legal ground to pierce the corporate veil.

*(IV) Unjust enrichment.* Birchwood's counterclaim also raises the theory of unjust enrichment. The district court determined the Torstensons would be unjustly enriched in concluding:

> Simply put, Birchwood is equitably obligated to pay CID, which made payments on the Note on its behalf. CID has made significant capital contributions over and above those of TL ($733,090.74 vs. $520,381.86) and attempts by the Torstensons, the sole members of TL, to obtain an equal share of any proceeds of the L.L.C. would unjustly enrich them. Individuals Knapp, Koolhof, and Kline have made payments by way of capital contributions to CID and payments under their own personal guarantees resulting in those individuals investing significantly more funds into Birchwood than the Torstensons.

In essence, Birchwood's unjust enrichment argument underlies each of the three issues on appeal. We consider it as an independent claim as well

because it was pled as a part of the counterclaim. Unjust enrichment "has not only given rise to specific derivative theories, such as contribution and indemnity, but can stand on its own as an open-ended, broad theory of restitution." *State Dep't of Human Servs. ex rel Palmer v. Unisys Corp.*, 637 N.W.2d 142, 150 (Iowa 2012). Although not raised as a separate issue on appeal, we address it because "we may affirm a district court ruling on an alternative ground provided the ground was urged in that court." *St. Malachy Roman Catholic Congregation of Geneseo v. Ingram*, 841 N.W.2d 338, 351 n.9 (Iowa 2013). But we are unable to affirm on this theory because the Torstensons are seeking reimbursement for their payments made on their personal guaranties and it was TL that was alleged to have not paid equal capital contributions to CID. The Torstensons, as individuals, have not been unjustly enriched, but rather are entitled to be compensated for the monies they expended towards Birchwood's obligation.

## IV. Conclusion.

We conclude the Torstensons were entitled to reimbursement from Birchwood for the amounts paid under the Torstensons' personal guaranties. We further conclude the district court erred in considering the law of contribution among co-guarantors, finding TL breached a fiduciary duty to Birchwood, piercing the corporate veil of TL and holding the Torstensons personally liable, and awarding some of the funds in dispute to the members of CID, who were not parties to the suit. We therefore reverse the district court order and remand for entry of judgment in favor of the Torstensons in the sum of $114,000.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**